## APPEAL NO. 14-2063

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

PHILLIP MOCEK,

        Plaintiff-Appellant,

v.

CITY OF ALBUQUERQUE, ET AL.,

        Defendants-Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
DISTRICT COURT CASE NO. 11-1109 JB/KMB

HONORABLE JAMES O. BROWNING, DISTRICT COURT JUDGE

## CITY OF ALBUQUERQUE DEFENDANTS' ANSWER BRIEF

ORAL ARGUMENT NOT REQUIRED

November 10, 2014

Renni Zifferblatt
Jeffrey L. Baker
THE BAKER LAW FIRM
20 First Plaza NW, Suite 402
Albuquerque, New Mexico 87102
Telephone: (505) 247-1855

*Attorneys for Defendants-Appellees*
*City of Albuquerque*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES                                          *i*

STATEMENT OF PRIOR OR RELATED APPEALS                        *x*

JURISDICTIONAL STATEMENT                                      1

STATEMENT OF THE ISSUES                                       1

STATEMENT OF THE CASE                                         1

STATEMENT OF THE FACTS                                        2

SUMMARY OF THE ARGUMENT                                       3

I.  ARGUMENT                                                  5

A.  Introduction                                             5

B.  Standard of Review for a Motion to Dismiss               6

II. PLAINTIFF FAILED TO STATE A FIRST AMENDMENT
    RETALIATION CLAIM                                         7

A. Location of Activity Defines First Amendment Analysis     9

B. News and Information Gathering Are Not Absolute Rights
Under the First Amendment                                    12

C. There Is No Objective Chilling Effect on First Amendment
Activities Based on These Facts                              17

D. Plaintiff Has Not Alleged Facts Demonstrating a Retaliatory
Motive                                                       20

III.  CITY DEFENDANTS' ARE ENTITLED TO QUALIFIED
IMMUNITY ON PLAINTIFF'S FIRST AMENDMENT CLAIM                22

IV.  CITY DEFENDANTS ARE ENTITLED TO QUALIFED
IMMUNITY ON PLAINTIFF'S FOURTH AMENDMENT CLAIM               30

A. City Defendants Had Reasonable Suspicion to Request
Plaintiff's Identification                                        30

B. Plaintiff's Failure to Produce Identification Provided Probable
Cause to Justify His Lawful Arrest                                34

C. City Defendants' Alleged Subjective Motives Are Irrelevant
To The Probable Cause Analysis                                    38

D. Probable Cause Does Not Require a Thorough Investigation       40

E. Plaintiff Has Failed to Demonstrate That Clearly Established
Law Supports His First Amendment Claim                            43

V. DISMISSAL OF PLAINTIFF'S ABUSE OF PROCESS CLAIM
WAS APPROPRIATE                                                   46

VI. PLAINTIFF HAS FAILED TO ALLEGE A VIABLE
MUNICIPAL LIABILTIY CLAIM                                         48

VII. PLAINTIFF'S REQUEST FOR DECLARATORY
JUDGMENT IS MISPLACED                                             51

VIII. PLAINTIFF'S REQUEST TO AMEND HIS COMPLAINT
IS IMPROPER                                                       54

IX. PLAINTIFF'S REQUEST TO HAVE A NEW JUDGE
APPOINTED SHOULD BE DENIED                                        55

CONCLUSION                                                        56

CERTIFICATE OF COMPLIANCE WITH RULE 31.3(D)

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

CERTIFICATE OF DIGITAL SUBMISSION

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Page**

3 Wayne R. LaFave, *Search and Seizure* § 5.1(c), at 23-24 (3d ed.1996)    35

*Adams–Arapahoe Joint Sch. Dist. No. 28–J v. Continental Ins. Co.,* 891 F.2d 772, 776 (10th Cir.1989)    2

*Albright v. Rodriguez*, 51 F.3d 1531, 1533, 1537 (10th Cir. 1995)    22, 37, 45

*American Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d 583, 599 (7th Cir. 2012) cert. denied, 133 S. Ct. 651 (U.S. 2012)    14

*Apodaca v. City of Albuquerque,* 443 F.3d 1286, 1289 (10th Cir.2006)    38

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681-682 (2009)    7, 21

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 526 (1983)    22

*Barber v. City of Salem, Ohio*, 953 F.2d 232 (6th Cir. 1992)    50, 51

*Bd. of Cnty. Comm'rs v. Brown*, 502 U.S. at 404 (1997)    49

*Bd. of Airport Comm'rs of City of Los Angeles v. Jews for Jesus*, 482 U.S. 569, 575-576 (1987)    27

*Branzburg v. Hayes*, 408 U.S. 665, 685 (1972)    13

*Brown v. Texas*, 433 U.S. 47, 53 (1979)    45

*Christensen v. Park City Mun. Corp.* 554 F.3d 1271, 1275 (10th Cir. 2009)    6

*i*

*Citizens United v. v. Federal Election Com'n*, 558 U.S. 310, 365 (2010) 27

*City of Santa Fe v. Martinez*, 2010-NMSC-033 ¶ 6, 148 N.M. 708, 710-11, 242 P.3d 275, 277-78 (2010) 45

*Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 528 (10th Cir.1994) 7

*Cooper & Lybrand v. Livesay*, 437 U.S. 436, 467 (1978) 1

*Cornelius v. NAACP Legal Def. & Ed. Fund, Inc.*, 473 U.S. 788, 800, 802, 808 (1985) 10, 11, 12

*Currier v. Doran*, 242 F.3d 923 (10th Cir. 1997) 24

*Delaware v. Prouse*, 440 U.S. 648, 661 (1979) 39

*Devenpeck v. Alford*, 543 U.S.146, 152 (2004) 37

*Dodds v. Richardson*, 614 F.3d 1200 (10th Cir. 2010) 49

*Eaton v. Meneley,* 379 F.3d 949, 955 (10th Cir.2004) 18

*Farmer v. Perril,* 288 F.3d 1254, 1259 (10th Cir. 2002) 30

*Florida v. Bostick,* 501 U.S. 428, 431 (1991) 33

*Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995) 16, 17

*Gee v. Pacheco*, 627 F.3d 1178, 1184 (10th Cir. 2010) 7

*Glik v. Cunniffe*, 655 F.3d 78, 80, 82 (1st Cir. 2011) 16, 25

*Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596, 604 (1982) 14

*Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006), rev'd on other grounds, 535 F.3d 1198 (10th Cir. 2008) 49

*Greene v. Barrett*, 174 F.3d 1136, 1142 (10th Cir. 1999)                    35

*Hague v. CIO*, 307 U.S. 496, 515 (1939)                                      10

*Hamm v. Members of the Board of Regents,* 708 F.2d
647, 651 (11th Cir.1983)                                                      56

*Harapat v. Vigil*, 676 F.Supp.2d 1250, 1263-64 (D.N.M.
2009)                                                                        35

*Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272, 1277-78
(10th Cir. 1994)                                                            2

*Hiibel v. New Mexico*, 542 U.S. 177, 187-188 (2004)                     42, 43

*Hope v. Pelzer*, 536 U.S. 730, 736 (2002)                                   30

*Houchins v. KQED, Inc.*, 438 U.S. 1, 11 (1978)                              14

*Howards v. McLaughlin*, 634 F.3d 1131, 1142 (10th Cir.
2011)                                                                        38

*Hunter v. Bryant*, 502 U.S. 224, 229 (1991)                                 35

*Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505
U.S. 672, 678-85 (1992)                                                    11-27

*Journal Pub. Co. v. Mechem*, 801 F.2d 1233, 1237 (10th
Cir. 1986)                                                                   13

*Kelly v. Borough of Carlisle*, 622 F.3d 262-63 (3rd Cir.
2010)                                                                        25

*Koch v. City of Hutchinson*, 847 F.2d 1436, 1441 (10th
Cir. 1988)                                                                    7

*Kolender v. Lawson,* 461 U.S. 352 (1983)                                    45

*Laird v. Tatum*, 408 U.S. 1, 14 (1972)                                      53

*iii*

*Long v. United States,* 972 F.2d 1174, 1183 (10th Cir.1992)                54

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)                51

*Lytle v. City of Haysville,* 138 F.3d 857, 862 (10th Cir.1998)                7

*Marx v. Gumbinner*, 905 F.2d 1503, 1597 fn. 6 (11th Cir. 1990)                44

*Maryland v. Pringle,* 540 U.S. 366, 371 (2003)                35

*McCormick v. City of Lawrence*, 130 F. App'x 987, 988 (10th Cir. 2005)                24

*Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992)                22, 27, 50

*Meese v. Keense*, 481 U.S. 465, 472 (1987)                52, 53

*Michigan v. DeFillippo,* 443 U.S. 31, 36 (1979)                34

*Minnesota Star & Tribune Co. Minnesota Comm'r of* Revenue, 460 U.S. 575 (1983)                27

*Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999)                55

*Nagol v. State of N.M.*, 923 F.Supp. 190, 191 (D.N.M. 1996)                45

*Novitsky v. City of Aurora,* 491 F.3d 1244, 1255–56 (10th Cir.2007)                48

*Owen v. City of Independence,* 445 U.S. 622, 657-58 (1980)                50

*Perry Educ. Ass'n v. Perry Local Educator's Ass'n*, 460 U.S. 37, 45-46 (1983)                10

*Pollack v. Reg'l Sch. Unit 75*, 2:13 –CV-00109-NT 2014
WL 1321118 (D. Me. Mar. 31, 2014)                    21

*Poole v. County of Otero,* 271 F.3d 955, 960 (10th
Cir.2001)                                            18

*Richmond Newspapers, Inc. v. Virginia*, 488 U.S. 555,
577 (1980)                                           13

*Rizzo v. Goode*, 423 U.S. 362 (1976)                50

*Robinson v. Fetterman,* 378 F. Supp. 2d 534, 541 (Ed.
Pa. 2005)                                            27

*Romero v. Fay*, 42 F.3d 1472, 1476, 1478 (10th Cir.
1995)                                                35, 44

*Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S.
947 (1984)                                           53

*Sevigny v. Dicksey*, 846 F.2d 953, 957 (4th Cir. 1988)   41

*Shark v. Metro Parks Serving Summit County*, 499 F.3d
559-560 (6th Cir. 2007)                              25

*Singer v. Wadman,* 745 F.2d 606, 608 (10th Cir.1984)   56

*Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir.
2000)                                                15-24

*Smith v. Plati*, 258 F.3d 1167 1177, 1178 (10th Cir. 2001)   17, 18, 23

*State v. Dawson*, 983 P.2d 421 (N.M. Ct. App. 1999)   38

*State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984
n. 7 (10th Cir. 1994)                                1

*Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240
(10th Cir. 2008)                                     51

*Tanner v. San Juan Cnty. Sheriff's Office*, 864 F. Supp.
2d 1090, 1124 n.23 (D.N.M. 2012)(Browning, J.)          38, 44

*Teigen v. Renfrow,* 511 F.3d 1072, 1078 (10th Cir. 2007)          6

*Tobey v. Jones*, 706 F.3d 379 (4th Cir. 2013)          19, 40

*Trigalte v. City of Tulsa,* 239 F.3d 1150, 1151 (10th Cir.
2001)          49

*United Public Workers of America (C.I.O.) v. Mitchell*,
330 U.S. 75, 89 (1947)          53

*United States v. Arvizu,* 534 U.S. 266, 273 (2002)          33

*United States v. Botero-Ospina*, 71 F.3d 783 (10th Cir.
1995)          39

*United States v. Bray,* 546 F.2d 851, 857 (10th Cir.1976)          56

*United States v. Ceballos*, 355 F.App'x 226-229 (10th
Cir. 2009)          39

*United States v. DeJear,* 552 F.3d 1196, 1200 (10th Cir.
2009)          33

*United States v. Guzman*, 864 F.2d 1512, 1515 (10th
Cir.1988)          39

*United States v. Hensley,* 469 U.S. 221, 229 [](1985)          42

*United States v. Kokinda*, 497 U.S. 720, 726 (1990)          10, 11

*United States v. Lopez*, 518 F.3d 790, 799 (10th Cir.
2008)          33

*United States v. Rodriguez*, 836 F. Supp. 2d 1258, 1274,
1282 (D.N.M. 2011) (Browning, J.), <u>aff'd</u>, 739 F.3d 481
(10th Cir. 2013)          39

*U.S. v. Sherman*, 581 F.2d 1358 (9th Cir. 1978)     13

*United States v. Williams,* 271 F.3d 1262, 1268 (10th Cir.
2001)     33

*United States Postal Service v. Council of Greenburgh
Civic Ass'ns*, 453 U.S. 114, 129-30 (1981)     11

*Utah Animal Rights Coal. V. Salt Lake City Corp.*, 371
F.3d 1248, 1266 (10th Cir. 2004)     51

*Whiteland Woods, L.P. v. Township of West Whiteland*,
193 F.3d 177, 180, 181-83 (3rd Cir. 1999)     25

*Wilder v. Turner,* 490 F.3d 810, 813 (10th Cir.2007)     34

*Wilkins v. DeReyes,* 528 F.3d 790, 801(10th Cir.2008)     48

*Willner v. University of Kansas,* 848 F.2d 1023 (10th Cir.
1988)     56

*Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)     9

*Wyoming v. Livingston*, 443 F.3d 1211, 1216 (10th Cir.
2006)*, cert denied*, 549 U.S. 1019 (2006)     1

*Zemel v. Rusk*, 381 U.S. 1, 17 (1965)     13, 17

**<u>Statutes:</u>**

28 U.S.C. § 144                                              56

28 U.S.C. § 445(a)                                           56

28 U.S.C. § 1291                                             1

42 U.S.C. § 1983                                             1, 37, 46, 49, 50

**<u>New Mexico Statutes</u>**

N.M. Statute Ann. 1978 § 30-22-3                             37

N.M. Statute Ann. 1978 § 41-4-12                            47

**<u>U.S. Constitution</u>**

First Amendment                                             3-54

Fourth Amendment                                            3-51

Fifth Amendment                                             4-55

Sixth Amendment                                             4-56

Fourteenth Amendment                                        9, 13

**<u>Federal Rules of Civil Procedure</u>**

Rule 12(b)(6)                                               3, 7

**<u>Code of Federal Regulations</u>**

49 C.F.R. § 1540.109                                    42

49 C.F.R. § 1542.201                                    13

**<u>Federal Regulations</u>**

67 Fed. Reg. 8340-01                                   27

67 Fed. Reg. 8344                                  27, 42, 43

## **STATEMENT OF PRIOR OR RELATED APPEALS**

There have been no prior or related appeals in this case.

*x*

## JURISDICTIONAL STATEMENT

This court has jurisdiction over final decisions of the federal district

courts pursuant to 28 U.S.C. § 1291. *Coopers & Lybrand v. Livesay,* 437 U.S. 463,

467 (1978) (quotations omitted). The Honorable James Browning dismissed

Plaintiff's Complaint and entered final judgment on February 28, 2014. (Record

Proper ("RP") 519-520).

## STATEMENT OF THE ISSUES

City Defendants-Appellees ("City Defendants") acknowledge the basis

of Plaintiff-Appellant's ("Plaintiff") grounds for appeal, as set forth in his

Statement of the Issues and will address each in turn.

## STATEMENT OF THE CASE

Plaintiff's procedural history set forth in his Brief in Chief ("BIC") at 3-4 is

essentially accurate. City Defendants believe that Plaintiff has abandoned any

claims related to his §1983 excessive force claim, unlawful search incident to

arrest claim, or state law claims for false arrest, since those issues are not raised in

Plaintiff's BIC. The Tenth Circuit routinely declines to consider arguments that are

not raised, or are inadequately presented, in an appellant's opening brief. *See e.g.*

*Wyoming v. Livingston,* 443 F.3d 1211, 1216 (10th Cir.2006), *cert. denied,* 549

U.S. 1019 (2006) (the omission of an issue in an opening brief generally forfeits

appellate consideration of that issue); *State Farm Fire & Cas. Co. v. Mhoon,* 31

F.3d 979, 984 n. 7 (10th Cir.1994). (The failure to raise an issue in an opening brief waives that issue). Generally speaking, "appellate courts will not entertain issues raised for the first time on appeal in an appellant's reply [brief]." *Headrick v. Rockwell Int'l Corp.,* 24 F.3d 1272, 1277–78 (10th Cir.1994). "An issue not included in either the docketing statement or the statement of issues in the party's initial brief is waived on appeal." *Adams–Arapahoe Joint Sch. Dist. No. 28–J v. Continental Ins. Co.,* 891 F.2d 772, 776 (10th Cir.1989) (mere mention of an issue in another context in docketing statement insufficient to preserve argument not contained in brief). While Plaintiff stated that he was "appealing from each and every decision of the Court," his only reference to the excessive force, search incident to arrest, or state law false arrest claim was his description of the Court's rulings. This is insufficient to preserve these claims. Accordingly, City Defendants will not address those claims since Plaintiff has not raised them in his BIC.

## STATEMENT OF THE FACTS

Plaintiff's Statement of the Facts [BIC at 55-21] is essentially a duplication of the facts set forth in the Complaint, which Judge Browning used as a basis for granting the City Defendants' Motion To Dismiss under Fed. R. Civ. P. 12(b)(6) standards [RP 389-394].

Accordingly, because City Defendants' arguments are premised solely on Plaintiff's version of the facts, no additional factual analysis is necessary or

appropriate. However, Plaintiff appears to imply that Judge Browning pre-

determined that City Defendants were not liable for any claims asserted against

them. [BIC at 22 ¶3]. Plaintiff has omitted the fact that Judge Browning did not

accept City Defendants' law of the case argument, but rather stated in his

Memorandum Opinion and Order that he "…will consider the issues on the merits

without deferring to the findings or conclusions of the MOO" [TSA Order]. He

proceeded to analyze the claims independent of his analysis in relation to the TSA

Motion To Dismiss. (See RP 483 ¶3).

## <u>SUMMARY OF THE ARGUMENT</u>

Judge Browning's comprehensive analysis of Plaintiff's Complaint

allegations directed to the City Defendants, as well as his ultimate dismissal of the

Complaint against the City Defendants, was correct as a matter of law. Plaintiff

failed to meet the plausibility threshold for his First and Fourth Amendment claims

entitling individual City Defendants to qualified immunity. Plaintiff's additional

failure to identify clearly existing law in the Tenth Circuit, United States Supreme

Court, or abundant case law from other circuits, also entitled individual City

Defendants to qualified immunity.

Plaintiff's municipal liability claim fails as a matter of law because no

constitutional violation was alleged, nor has Plaintiff demonstrated the necessary

causal link between the alleged unconstitutional policy and a constitutional injury.

Respecting Plaintiff's state law claim for Malicious Abuse of Process, this claim was premised solely on an alleged lack of probable cause. The fact that probable cause existed to effectuate Plaintiff's arrest is dispositive of this issue. Plaintiff's current assertion that he should be permitted to pursue this claim under a procedural impropriety theory, on the grounds that City Defendants allegedly attempted to destroy his video-recording of the incident, is not supported by clearly established law, and has not been sufficient developed by Plaintiff to warrant remand. Furthermore, since Plaintiff used the video-tape in his underlying criminal trial, and asserts that the recording was the basis for his acquittal, he has failed to state a tangible injury under state law for this claim. Jurisdiction over this claim is also questionable, since Plaintiff did not plead sufficient facts to meet the diversity jurisdiction requirements.

Plaintiff's request for leave to file an amended complaint is without merit. Plaintiff has not provided this Court with any information related to this request. Furthermore, if this request is based on Plaintiff's prior attempt to amend the Complaint to include Fifth and Sixth Amendment claims, permitting such amendments would be futile under the theories he posited in the District Court. Additionally, Plaintiff's request to add a copy of the transcript of his video-recording to any prospective amended complaint would also be futile, because the recording does not provide a basis for Plaintiff to meet his burden in relation to any

of the claims asserted in this case.  Plaintiff's request for a declaratory judgment is not based on future harms but rather centered on one incident. The Declaratory Judgment Act is meant to correct future harms, and Plaintiff has failed to demonstrate a cognizable constitutional injury that would invoke the Act.

Finally, Plaintiff's request to recuse Judge Browning should be denied. Plaintiff did not file a motion to recuse in the district court, and therefore his request is both misplaced and untimely. Furthermore, Plaintiff's recusal request is based on the fact that Judge Browning issued adverse decisions against him. This is an impermissible basis to make this request, and Plaintiff has not demonstrated bias by Judge Browning that would justify granting this request.

Ultimately, Judge Browning's holdings are premised on a thorough analysis and reflective of the clearly existing law in this Circuit and in the Supreme Court. Plaintiff has failed to demonstrate that he has any viable claims. Accordingly, Judge Browning's granting of City Defendants' Motion To Dismiss and dismissal of Plaintiff's case should be affirmed.

## I.    ARGUMENT

### A. Introduction

This case cannot be evaluated in the context of traditional public space. Rather, the incident occurred in an area inherently encompassing a risk to public safety-a security checkpoint inside an airport. In the wake of the calamitous events

of September 11, 2001, the federal government purposefully and intentionally changed security protocols utilized at all airports as a matter of national security. TSA agents were given specific directives which require them to utilize enhanced scrutiny of passenger activity, and to mitigate influences which interfere with or distract them from their responsibilities to the public. Law enforcement officers working at airports are present, in part, to provide support to TSA agents, and most importantly to protect the public. It is against that backdrop that this case must be evaluated, pursuant to existing standards governing Plaintiff's claims. Furthermore, Plaintiff's intentional refusal to comply with reasonable regulations in a non-public forum rendered him subject to investigation and eventual arrest, due to his non-compliance. Plaintiff's subjective belief that he did not interfere with TSA or City Defendants is not borne out by the allegations in his Complaint.

### B. Standard of Review for a Motion to Dismiss

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the *de novo* standard of review is utilized, "…applying the same legal standard applicable in the district court." *Christensen v. Park City Mun. Corp*., 554 F.3d 1271, 1275 (10th Cir. 2009) (quoting *Teigen v. Renfrow,* 511 F.3d 1072, 1078 (10th Cir.2007). The Court "…must look for plausibility in the complaint" *Id.* (citations and internal quotation marks omitted). Put another way, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The Tenth Circuit in *Gee v. Pacheco*, 627 F.3d 1178, 1184 (quoting Iqbal at *Id.*) explained the plausibility requirement as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Because the standard of review is de novo, this Court "…may [also] affirm on grounds other than those relied on by the district court when the record contains an adequate and independent basis for that result." *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 528 (10th Cir.1994).

## II.   PLAINTIFF FAILED TO STATE A FIRST AMENDMENT RETALIATION CLAIM

In evaluating a First Amendment retaliation claim, the standard of review is also *de novo*. *Lytle v. City of Haysville,* 138 F.3d 857, 862 (10th Cir.1998). The protected or unprotected nature of speech is ultimately a question of law, and is therefore, properly within the province of this Court to evaluate. *Koch v. City of Hutchinson*, 847 F.2d 1436, 1441 (10th Cir. 1988) (citation omitted).

In his Complaint, Plaintiff alleged:

Defendants' above-described policies, practices, and conduct in

unlawfully arresting Plaintiff, seizing his camera and memory contained
therein, searching his camera and its memory, attempting to destroy
evidence by deleting the contents of his camera, and filing criminal charges
against him, in retaliation for his video and audio recording of them, were
intended to, and did interfere with Plaintiff's constitutionally protected right
to record audio and video where such recording was permitted, and chill
Plaintiff from such activity in the future. These policies, practices, and
conduct violate Plaintiff's free speech and associational rights as guaranteed
by the First Amendment. [RP 29 ¶95].

In sum, the district court correctly held that Plaintiff failed to state a First
Amendment Retaliation claim for the following reasons: Plaintiff failed to allege
facts demonstrating that: 1) the City Defendants dedicated the TSA checkpoint as
an area of First Amendment activity that has historically been earmarked for the
free expression of ideas, as opposed to a nonpublic forum subject to reasonable
government restrictions on First Amendment activity; 2) the City Defendants'
conduct was unreasonable in light of the fact that airport terminals generally, and a
checkpoint particularly, are subject to reasonable restrictions; 3) Plaintiff failed to
allege that the City Defendants' request for Plaintiff's identification and
subsequent arrest were based on opposition to his viewpoint, particularly since
Plaintiff, by his admission, did not convey his viewpoint to either TSA Defendants
or the City Defendants; and 4) absent express allegations that the City Defendants'
actions were based on suppression of his speech, Plaintiff failed to allege a
plausible conclusion that the actions taken were discriminatory in nature. [See RP
484-493].

8

In evaluating this appeal, it is notable that nowhere in Plaintiff's Complaint does he assert a First Amendment right to news or information gathering.[1] That said, Plaintiff asserts that he was engaged in constitutionally protected activity, namely, news and information gathering. [BIC at 27-29 §B]. The First Amendment, as applied to state and local governments through the Fourteenth Amendment, provides that state actors "shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. In order to prevail on a First Amendment retaliation claim, Plaintiff "…must establish that (1) he 'was engaged in constitutionally protected activity', (2) the defendant's actions caused him 'to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that [protected] activity', and (3) the 'defendant's actions were substantially motivated as a response to his protected conduct.'" *Worrell v. Henry,* 219 F.3d 1197, 1212 (10th Cir.2000) (quotations omitted).

## A. Location of Activity Defines First Amendment Analysis

Plaintiff's First Amendment retaliation claim cannot be viewed in a vacuum. Rather, it must be evaluated in the context of where the alleged protected activity occurred. The Supreme Court has established three distinct categories of

---

[1] Plaintiff did not assert the specific right to gather information or news in his Complaint. Rather, the first time Plaintiff made this assertion was in Plaintiff's Amended Opposition to Federal Defendants' Motion to Dismiss. [RP 090 §A]. Despite Plaintiff's omission in his Complaint, the District Court addressed Plaintiff's assertions that he was protected under the First Amendment for gathering information and newsgathering in his Memorandum Opinions for both the Federal and City Defendants. [See RP 221-231 §, 485 ¶2].

government property: (1) traditional public fora; (2) designated public fora; and (3) nonpublic fora. *Cornelius v. NAACP Legal Def. & Ed. Fund, Inc.*, 473 U.S. 788, 802 (1985). The Supreme Court implemented the forum analysis to evaluate when the government's interest in limiting use of its property which it has dedicated for a specific use, outweighs the interests of others to use the property for other purposes. *United States v. Kokinda*, 497 U.S. 720, 726 (1990). Traditional public fora are places that "by long tradition or by government fiat have been devoted to assembly and debate." *Cornelius* at 45 (noting that traditional public fora include streets, sidewalks, and parks, for they "have immemorially been held in trust for the use of the public and, time out of mind, have been used for the purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Id.*) (quoting *Hague v. CIO,* 307 U.S. 496, 515 (1939)). Governmental restrictions on speech in a public forum are quite limited, and are narrowly construed but do allow for content-neutral time, place, and manner restrictions which are narrowly tailored. See *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45–46 (1983). The second category is a "designated" public forum, which the government creates "by *intentionally* opening a non-traditional forum for public discourse." 802  (emphasis in the original) (designated public forum is created where government intentionally opens a nontraditional public forum for public discourse). Lastly, a nonpublic forum encompasses any remaining

10

government property that "is not by tradition or designation a forum for public communication." *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee* ("Krishna") 505 U.S. 672, 678-679 (1992). In a nonpublic forum, as long as the restriction is reasonable in light of the purpose served by the forum and is not designed to suppress speech based on opposition to the views of the speaker, it does not violate the First Amendment. *Id*. at 679. A speech restriction "… need not be the most reasonable or the only reasonable limitation." *Krishna* at 683 (quoting *Kokinda,* 497 at 730). "In contrast to a public forum, a finding of strict incompatibility between the nature of the speech or the identity of the speaker and the functioning of the nonpublic forum is not mandated." *Cornelius,* 473 U.S. at 808. This is because the government "need not permit all forms of speech on property it owns and controls." *Krishna* at 678 (citing *United States Postal Service v. Council of Greenburgh Civic Ass'ns,* 453 U.S. 114, 129–30 (1981) (noting that the Court has previously acknowledged that the First Amendment does not guarantee access to property simply because it is owned or controlled by the government). In fact, the Supreme Court has expressly held that the extent of the government's ability to restrict protected speech on public property depends upon the nature of the forum and whether the speech restriction is content-based or content-neutral. *See Krishna* at 678-79.

It is crucial to this evaluation to note that the Supreme Court has expressly held that airports are non-public forums subject to reasonable time, place, and manner restrictions. See *Krishna* at 679-83. *Krishna* specifically stated that "tradition of airport activity does not demonstrate that airports have historically been made available for speech activity." *Id.* at 680-81. Notably, *Krishna* observed that while airport terminals are public places, they include security checkpoints, which the Federal Aviation Administration "not infrequently" restricts public access to. *Id.* at 681. The Supreme Court has also stated that the primary purpose of a screening checkpoint is to facilitate passenger safety and the safety of buildings, because a plane can be a dangerous weapon. *Cornelius* at 800; see also 49 C.F.R. §1542.201 (requiring detection and prevention of unauthorized activities in secure areas of airports). In line with those principles, *Krishna* held that a ban on solicitation by a religious group inside airport terminals was a reasonable restriction because  the activities had a 'disruptive effect…on business" and patron travel, even though it interfered with the plaintiffs' religious beliefs, which involved dissemination of religious information involving the groups' beliefs as well as requests for donations. (*Id. a*t 683-685).

## B. News and Information Gathering Are Not Absolute Rights Under the First Amendment

Plaintiff contends that he was engaged in constitutionally protected news

and information gathering when he began filming at the security checkpoint. [BIC 27-29§B]. However, Plaintiff's reliance on several cases for the proposition that the right to gather information and news is an absolute right guaranteed by the First Amendment is misplaced. See *Journal Pub. Co. v. Mechem*, 801 F.2d 1233, 1237 (10th Cir. 1986) (holding that district court's order restricting press contact with former jurors was impermissibly overbroad and was a "sweeping restraint" that was not based on a compelling reason but also observing that the First Amendment does not "…provide an unrestrained right to gather information") (citing to *Zemel v. Rusk,* 381 U.S. 1, 17 (1965); *U.S. v. Sherman*, 581 F.2d 1358 (9th Cir. 1978) [RP 27§B¶1] (also involving a prior restraint on the media by prohibiting contact with jurors); *Branzburg v. Hayes*, 408 U.S. 665, 685 (1972) [RP at *Id.*] (holding that the First and Fourteenth Amendments were not abridged by requiring reporters to disclose the identity of their confidential sources to a grand jury when that information was needed in the course of a good-faith criminal investigation and finding, among other things, that certain conditions may be placed on newsgathering despite the fact that the conditions may interfere with First Amendment protections associated with newsgathering); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 577 (1980) [RP at *Id.*] (involving the right to attend criminal trials, which the Court held "… is implicit in the guarantees of the First Amendment," based on the long standing tradition of holding open trials for the

13

benefit of the public to discern how criminal trials are conducted and because

"[t]he right of access to places traditionally open to the public, as criminal trials

have long been, may be seen as assured by the amalgam of the First Amendment

guarantees of speech and press"); *Globe Newspaper Co. v. Superior Court for*

*Norfolk County*, 457 U.S. 596, 604 (1982) [RP at *Id.*] (involving the right of access

to criminal trials under the First Amendment); *First Nat. Bank of Boston v. Bellotti*,

435 U.S. 765, 783 (1978) [RP at 27¶3] (holding that "A commercial advertisement

is constitutionally protected not so much because it pertains to the seller's business

as because it furthers the societal interest in the free flow of commercial

information" ); *Houchins v. KQED, Inc.,* 438 U.S. 1, 11 (1978) ("[t]here is an

undoubted right to gather news from any source by means within the law"… "but

that affords no basis for the claim that the First Amendment compels others -

private persons or governments - to supply information"). Plaintiff's reliance on

these cases is misplaced, because each involves a public forum and activities that

are traditionally recognized as core activities protected by the First Amendment.

    Plaintiff also cites to several cases for the purpose of demonstrating that

audio or video recording in a public place is protected First Amendment activity.

[BIC at 28]. However, none of these cases involve Tenth Circuit or United States

Supreme Court decisions. Moreover, these cases involve distinguishable facts,

locations, and legal issues. See e.g. *American Civil Liberties Union of Illinois v.*

14

*Alvarez*, 679 F.3d 583, 599 (7th Cir. 2012) cert. denied, 133 S. Ct. 651 (U.S. 2012)

("…the eavesdropping statute burdens speech and press rights and is subject to

heightened First Amendment scrutiny  and distinguishing the statute from general

principles that do not implicate First Amendment concerns [by noting that] …a

generally applicable law will not violate the First Amendment simply because its

application has an incidental effect on speech or the press").

　　　In the case before this Court, this incident does not involve a law that

prohibits recording of law enforcement officers generally, but rather, involves

federal regulations that prohibit individuals from interfering with TSA activities.

[See RP at 502]. The regulations are content neutral and have an incidental effect

on speech, given that recording in other areas of the airport is not prohibited, as

Plaintiff acknowledges. [RP 15-17¶¶36-41]. Accordingly, reliance on these cases

to support the argument that there is an absolute right to record law enforcement

activities in every setting is unpersuasive. Notably, Plaintiff's reliance on *Smith v.*

*City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) [BIC 28¶2] is particularly

instructive, because in *Smith* the plaintiffs alleged that their First Amendment

rights were violated when they were prohibited from filming police activities on a

public street. *Id.* While *Smith* held that the plaintiffs had a First Amendment right

to photograph or videotape police conduct, the Court also held that these activities

were subject to reasonable time, manner and place restrictions. *Id.* Moreover, the

First Amendment right was couched in terms of "…the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest." (*Id.* citation omitted). This is another way of saying that the First Amendment protects such recordings in public forums although these activities are subject to reasonable restrictions. Plaintiff also cites to *Fordyce v. City of Seattle,* 55 F.3d 436, 439 (9th Cir. 1995) to support the same contention. [BIC at *Id.*]. In *Fordyce*, while the Court held that genuine issues existed as to whether plaintiff was arrest for First Amendment activity, officers were entitled to qualified immunity on clearly existing law standard. *Fordyce*, like *Smith*, involved videotaping during a public protest - a public forum - rather than in a secure and non-public forum, as in this case. Similarly, Plaintiff relies on *Glik v. Cunniffe* 655 F.3d 78, 80 (1st Cir. 2011) (BIC at 29 ¶1), where the plaintiff videotaped police officers during an arrest on a public street. While *Glik* held that gathering information about governmental affairs is encompassed in First Amendment protections, particularly in "traditional public spaces," it also reasoned that "…the right to film is not without limitations. It may be subject to reasonable time, place, and manner restrictions." *Id.* citing *Smith v. Cummings*, 212 F3d at 1333.  Notably, the Court also reasoned that recording was "...from a comfortable remove" and "neither spoke to nor molested them [the police officers] in any way" (except in directly responding to the officers when they addressed him). *Id.* (citation omitted).

This is quite a different scenario than Plaintiff's actions in this case, which occurred in a non-public forum at a security location, and could hardly be characterized as interference-free activity, since multiple TSA agents and law enforcement officers were called away from their normal duties due to Plaintiff's conduct.

Judge Browning correctly distinguished *Smith* and *Fordyce* from this case by observing that they involved recording matters of public interest in public places. [RP at 486]. Additionally, Judge Browning properly reasoned that in this Circuit, and in the United States Supreme Court, the right to record law enforcement activities is definitively limited. [RP at 487 ¶1] (citing *Zemel v. Rusk*, 381 U.S. at 17) (there is not an "unrestrained right to gather information" in the context of the right to speak or publish); and *Smith v. Plati*, 258 F.3d at 1178 (there is "no general First Amendment right of access to all sources of information within governmental control"). Furthermore, as Judge Browning observed, Plaintiff's description of his recording activities in a security checkpoint of the airport is entitled to less protection than the plaintiffs in *Krishna*, which upheld a complete ban on solicitation in an airport terminal as a reasonable regulation despite the ban's First Amendment implications. [See RP at *Id.*].

**C. There Is No Objective Chilling Effect on First Amendment Activities Based on These Facts**

17

Plaintiff contends that City Defendants improperly instructed him to stop filming, seized, arrested, tampered with his property, and caused him to be criminally prosecuted, demonstrating that such conduct "…would chill a person of ordinary firmness from continuing to engage in that activity." [BIC 31¶2]. This Court's inquiry is premised on "whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001) (citation omitted). This standard is a rigorous one to satisfy. *Eaton v. Meneley,* 379 F.3d 949, 955 (10th Cir.2004). "Thus, although the objective standard permits a plaintiff who perseveres despite governmental interference to bring suit, 'a trivial or *de minimis* injury' is not actionable." *Id.* at 954-55 (quoting *Poole v. County of Otero,* 271 F.3d 955, 960 (10th Cir.2001).

Plaintiff does not allege that he is completely prohibited from filming inside the airport, or at the security checkpoint. In fact, by Plaintiff's own admission, had he provided advance notice to TSA, he would have been permitted to film at the security checkpoint, as would any other individual. [RP ¶¶37-42]. Furthermore, City Defendants' order that Plaintiff stop filming at the security checkpoint was reasonable because of the disruptive effect that such activities have in an area that is potentially dangerous and dedicated to security protocol. [See RP at 502

discussing federal regulations, RP 490 ¶2, 491 ¶1 discussing distraction Plaintiff created].

Furthermore, Plaintiff's reliance on *Tobey v. Jones,* 706 F.3d 379 (4th Cir. 2013) [BIC 30] actually supports Judge Browning's discussion of the plausibility standard in this case. In *Tobey*, the plaintiff approached TSA agents at the airport and removed his shirt (and sweat pants) revealing the text of the Fourth Amendment written on his chest. *Id.* at 387. When the TSA agent told the plaintiff he did not have to remove his clothing, plaintiff advised the TSA agent that he wanted to express his view that the TSA screening procedures were unconstitutional. *Id.* He was promptly arrested. *Id. Tobey* held that the plaintiff had satisfied the First Amendment retaliation pleading requirement because he had stated sufficient facts to demonstrate that he was arrested in retaliation for expressly conveying a message protected by the First Amendment. *Id.* In contrast, and as noted above, Plaintiff does not assert in any portion of his Complaint that he was conveying a particular message, nor did he explain the purpose of videotaping the screening checkpoint to Defendants. Therefore, reliance on the *Tobey* case does little to demonstrate an objective chilling effect on First Amendment activities.

Respecting Plaintiff's argument that he was seized, arrested, and his camera was allegedly tampered with, [BIC at 31¶2], such actions are not demonstrative of anything other than *de minimis* injuries. Plaintiff was arrested after he refused to

19

produce identification, in violation of state law. His seizure was a legitimate part of his lawful arrest. Despite Plaintiff's protestations that his camera was tampered with, Plaintiff retrieved his video footage and by his own account, he was acquitted as a result of the contents of that video. [RP ¶27 ¶87, 28¶88]. Ultimately, though, applying the objective standard, a person of ordinary firmness would not be chilled in their First Amendment activities since filming at the airport is not banned, and accommodations at the security checkpoint for purposes of filming are available. [See RP at 15-16 ¶¶33-41].

### D. Plaintiff Has Not Alleged Facts Demonstrating a Retaliatory Motive

Plaintiff asserts that he has pled sufficient facts to demonstrate that City Defendants' actions were based on his refusal to halt his protected First Amendment right to film. [BIC 31-33 §D]. In particular, Plaintiff claims that when he refused to comply with City Defendant Dilley's order that he comply with the TSA agents' instructions, and he continued filming, City Defendants threatened him, and although he did not refuse to leave the airport, he was arrested. [BIC 32 ¶3-33 ¶1]. Plaintiff also contends that he was arrested after he informed City Defendants that he wanted to remain silent and wanted to talk to an attorney, was arrested, his camera was tampered with, he was booked and incarcerated, eventually prosecuted, and ultimately acquitted of the charges. [*Id. a*t 33]. Plaintiff contends that these factors provide strong circumstantial evidence of retaliation. In

support, Plaintiff cites to an unpublished decision, *Pollack v. Reg'l Sch. Unit 75*,

2:13 –CV-00109-NT 2014 WL 1321118 (D. Me. Mar. 31, 2014), which states that

the proximity of the expressive conduct and the adverse action taken may

demonstrate retaliation.  The problem with Plaintiff's argument, as observed by

Judge Browning, is as follows:

> Plaintiff did not allege that the directive to stop filming or his removal from
> the area were done in opposition to his viewpoint, as Mocek did not relay his
> viewpoint to the TSA agents or AAPD officers while filming. His only basis
> for the assertion that they discriminated against him because of his
> viewpoint is Mocek's argument that the TSA agents and AAPD officer
> assumed what his viewpoint was.[RP at 492 ¶1].

Judge Browning also correctly observed that the ban on solicitation activities

that were upheld in *Krishna* were far more expressive of a viewpoint than

Plaintiff's "silent recording." [*Id.*]. Most importantly though, Judge Browning's

determination that absent factual assertions in the Complaint that the City

Defendants asked Plaintiff for identification or arrested him out of opposition to

his unstated viewpoint, there were insufficient factual assertions to "…conclude

that the AAPD officers' actions were aimed at suppressing Mocek's viewpoint."

[RP 493 ¶1 (citing to *Iqbal* 556 U.S. 681-682 noting that "the facts did not

foreclose the possibility of the defendants having a non-discriminatory motive…"

thereby failing to meet the plausibility threshold)]. Plaintiff is essentially asking

this Court to presuppose what was in the minds of the City Defendants and assume

facts that Plaintiff has not alleged. Such a request defies the plausibility standard,

21

which requires more than speculation about a possible motive by governmental actors. Viewing the facts in a light most favorable to Plaintiff, he simply failed to state that he was retaliated against based on his viewpoint. Accordingly, Judge Browning's ruling that Plaintiff failed to state a First Amendment claim should be affirmed.

## III.    CITY DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S FIRST AMENDMENT CLAIM

Qualified immunity requires the nonmoving party to satisfy a heightened pleading requirement by first demonstrating that the defendant's actions violated a constitutional or statutory right, and also demonstrating that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue. *Albright v. Rodriguez,* 51 F.3d 1531, 1533 (10th Cir.1995) (citations omitted). "If the plaintiff fails to carry either part of his two-part burden, the defendant is entitled to qualified immunity." *Id.* (emphasis added). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver,* 960 F.2d 1493, 1498 (10th Cir.1992). Under this standard, Courts should not assume that a plaintiff "can prove facts that [the plaintiff] has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State*

*Council of Carpenters,* 459 U.S. 519, 526 (1983). Review of a "…district court's denial of a motion to dismiss based on qualified immunity de novo." *Peterson v. Jensen,* 371 F.3d 1199, 1201 (10th Cir. 2004).

Judge Browning held that City Defendants are entitled to qualified immunity on Plaintiff's First Amendment claim because City Defendants did not violate Plaintiff's right to gather news, and neither the Tenth Circuit nor the Supreme Court has held that right to gather news in the context of an airport is clearly established. [RP 493 §B, 494 ¶¶1-2]. In relation to the clearly established law prong of the analysis, Judge Browning cites to *Smith v. Plati*, 258 F.3d at 1178, for the correct proposition that there is no general First Amendment right of access to all sources of information within government control. [RP at 494 ¶1]. Moreover, Judge Browning sensibly relied on *Krishna*, in determining that First Amendment rights may be restricted and be subject to reasonable time, place, and manner restrictions. [*Id.* ¶2]. *Krishna* is the seminal case on point in articulating First Amendment rights in the context of an airport setting. Because neither the Tenth Circuit nor the United States Supreme Court has established the absolute First Amendment right that Plaintiff asserts in this case, Judge Browning was correct in determining that "[r]ather than being 'so thoroughly developed and consistently recognized under the law as to be indisputable and unquestioned," the Supreme Court has upheld reasonable limitations on First Amendment conduct in

23

airport terminals…" [*Id.*]. Furthermore, as Judge Browning correctly observed, despite Plaintiff's claim that other circuits have determined that the First Amendment includes the right to record police officers while they are carrying out their duties, the Tenth Circuit, the Supreme Court, and the weight of authority from other circuits have not established the right Plaintiff claims. [RP at 495 quoting *Currier v. Doran*, 242 F.3d 905, 923 (2001) ("Ordinarily, in order for the law to be clearly established there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.")].  In fact, as Judge Browning observes, the only case in the Tenth Circuit dealing with the right to record police officer activity in the context of the First Amendment is an unpublished decision in which the Court affirmed a district court's judgment that destruction of a plaintiff's video recordings of police activity during sobriety checkpoints and traffic stops was "not clearly established First Amendment violation." [RP at 495 citing *McCormick v. Lawrence*, 130 F.App'x 987, 998 (10th Cir. 2005)]. Judge Browning wisely reasoned that such a holding, if anything, would not provide City Defendants with notice that Plaintiff's recording at a screening checkpoint was a First Amendment violation. [*Id.*]. Furthermore, as Judge Browning also correctly observed, in other circuits which have found that such a right exists, they are subject to reasonable time, place, and manner restrictions. [*Id.* citing *Smith v.*

*Cumming*, 212 F.3d at 1333; *Glik v. Cunniffe*, 655 F.3d at 82; *Kelly v. Borough of Carlisle*, 622 F.3d at 262-63 (noting that safety concerns during traffic stops rendered the First Amendment right to record them subject to reasonable restrictions); see also RP 496 comparing safety concerns at the security checkpoint of an airport with those involved in traffic stops (considered inherently dangerous) with filming police conduct in a public park, from a safe distance, which does not interfere with law enforcement activities- as in the *Glik* case]. Ultimately, Judge Browning's determination is based on the clearly established law from this Circuit, the Supreme Court, and other Circuits. The weight of authority from these sources does not support the idea that reasonable officers in City Defendants' position would have understood that ordering Plaintiff to stop recording at the screening checkpoint, and then enforcing the order when he did not comply, was a First Amendment violation. [See RP at 496 ¶1].

Plaintiff contends that Judge Browning improperly relied on the *Krishna* case and the non-public forum analysis, instead of focusing on the right to gather information and the alleged improper restrictions placed on Plaintiff by City Defendants. [See BIC 34-35§B and fn 2]. Plaintiff cites to *Shark v. Metro Parks Serving Summit County*, 499 F.3d 559,560 (6th Cir. 2007) and *Whiteland Woods, L.P. v. Township of West Whiteland*, 193 F.3d 177, 181-83 (3rd Cir. 1999) for the proposition that forum analysis may not apply to right of access cases. [RP 34

fn.2]. Notably, *Shark* held that the Park's "…prohibition on disturbing trees and its policy for handling found property each provide a basis justifying its removing the plaintiffs' cameras," and did not violate plaintiff's First Amendment rights to gather information. *Id.* at 563. In *Whiteland*, the issue was whether there is a federal constitutional right to videotape public meetings of a township planning commission, when other effective means of recording the proceedings are available. 193 F.3d at 180. *Whiteland* ultimately held that the "…plaintiff has failed to demonstrate an essential nexus between the right of access and a right to videotape the Planning Commission proceedings," because plaintiff  and the public at large were permitted to attend meetings, record them using notes and audio equipment, and participate in the meetings," thus plaintiff had not demonstrated a First Amendment violation. *Id.* at 183.

While Plaintiff is correct in pointing out that forum analysis was not used in these two cases involving the right to video tape in places traditionally held out to the public as areas of free expression, the holdings of both cases demonstrate that reasonable regulations may be utilized without offending First Amendment precepts. Moreover, under the clearly existing law standard encompassed in qualified immunity analysis, United States Supreme Court or Tenth Circuit precedents are the guidepost for this evaluation, unless there is a "…clearly established weight of authority from other courts" demonstrating that the law is as

Plaintiff claims it to be. *Medina v. City and County of Denver,* 960 F.2d 1493, 1498 (10th Cir.1992). Plaintiff's additional citations also do not support his contentions. See e.g. *Bd. of Airport Comm'rs of City of Los Angeles v. Jews for Jesus*, 482 U.S. 569, 575-576 (1987) (holding that a complete ban on all First Amendment activity in an airport was facially unconstitutional without engaging in a forum analysis); *Citizens United v. v. Federal Election Com'n*, 558 U.S. 310, 365 (2010) [BIC 35 ¶2] (holding in part that "…the Government may not suppress political speech on the basis of the speaker's corporate identity"); *Minnesota Star & Tribune Co. Minnesota Comm'r of* Revenue, 460 U.S. 575, 591(1983) [BIC 35 ¶2] (holding that the state of Minnesota "… created a special tax that applies only to certain publications protected by the First Amendment"... and as such is "…facially discriminatory because it singles out certain publications to absorb the tax if they are large periodicals"); *Robinson v. Fetterman,* 378 F. Supp. 2d 534, 541 (Ed. Pa. 2005) (involving prior restraint on filming and recording of police activities 20 to 30 feet away from the state highway, rather than interfere with the State Police officer's truck inspections). None of these cases demonstrate that Plaintiff's activities are supported by clearly existing law.

　　　Furthermore, Plaintiff's curious contention that there is no evidence to support Judge Browning's discussion of security and safety concerns at the airport ignores the *Krishna* case discussing the distracting effect that solicitation can have

27

on airport passengers and employees, 505 U.S. at 683, federal regulations cited by

TSA Defendants [see RP at 491 citing to 67 Fed. Reg. 8340-01, 8344 describing

the potentially dangerous effect of disruptions to TSA agents duties], Plaintiff's

acknowledgement that he researched TSA regulations before the incident and was

aware that pre-scheduling of recording at TSA checkpoints was encouraged, [RP

31-41, BIC 6-7], and common sense, following the security changes implemented

by all airports after 9/11. To suggest that security concerns at airport security

checkpoints are fictitious or somehow manufactured defies logic and the day-to-

day security concerns at airports around the country. Plaintiff's further assertion

that there is no evidence that he was filming the TSA monitors is an equally

remarkable statement, since none of the Defendants would have any way of

knowing what Plaintiff was capturing on his video camera. Furthermore, Plaintiff's

contention that there is no evidence that he caused a disturbance, since he was calm

throughout the encounter [BIC at 36 ¶2], misrepresents the commotion Plaintiff

caused. As Judge Browning noted, several TSA agents and City Defendants were

required to respond to the scene, which took them away from their other duties.

Plaintiff may not have been shouting, but he refused to comply with either the TSA

or City Defendants' instructions. Furthermore, none of the Defendants had any

way of knowing why Plaintiff was conducting himself as he did, nor does the law

require them to know his purpose before taking action. Plaintiff's insistence that he

did not cause a disturbance is insufficient to demonstrate that Judge Browning

ruled incorrectly. Plaintiff's claim that Judge Browning engaged in "speculative

reasonableness" is simply not borne out by his description of his actions in this

case-which was the whole premise of Judge Browning's rulings. Plaintiff simply

seeks to distort the qualified immunity standard by claiming that Defendants'

actions were discretionary, citing to the fact that video recording and photography

are not prohibited at the airport generally, and no one was singled out except him.

[BIC 37 ¶1 & fn. 7]. However, Plaintiff has not alleged that anyone else was

filming at a TSA security checkpoint, rendering his assertion nothing other than

pure conjecture. The fact that Plaintiff acknowledges that filming and photography

inside the airport are not prohibited only serves to demonstrate the reasonableness

of banning individuals from doing so at a security sensitive area of the airport. The

fact that Plaintiff claims to have been in publically accessible areas of the airport

when this occurred does not change this analysis. The fact remains that Plaintiff

was in a separate line at the security checkpoint because he did not produce

identification, and he began to film at that location and refused to stop. Plaintiff

does not have an absolute right to defy security regulations simply because he

wants to test boundaries. In a non-public forum, such as this one, City Defendants

acted reasonably in attempting to stop Plaintiff from filming at the security

checkpoint. There is no Tenth Circuit or Supreme Court case which definitively

holds that Plaintiff has a First Amendment right to record the activities of police officers at a security checkpoint of the airport. Despite Plaintiff's protestations to the contrary, location is the quintessentially defining feature of First Amendment analysis. In a non-public forum, reasonable restrictions such as the one here, are constitutionally permissible. Accordingly, Judge Browning's ruling on qualified immunity should be affirmed.

## IV.    CITY DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S FOURTH AMENDMENT CLAIM

The *de novo* standard applies to a district court's ruling on qualified immunity. *Farmer v. Perril,* 288 F.3d 1254, 1259 (10th Cir. 2002). The threshold inquiry is whether City Defendants violated Plaintiff's Fourth Amendment right to be free from unreasonable seizures. *Hope v. Pelzer,* 536 U.S. 730, 736 (2002). If the Court concludes that Plaintiff has alleged constitutionally impermissible conduct, City Defendants "may nevertheless be shielded from liability for civil damages if [their] actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 739. (citation omitted).

### A. City Defendants Had Reasonable Suspicion to Request Plaintiff's Identification

Plaintiff contends that Judge Browning erred in finding that City Defendants

had reasonable suspicion that Plaintiff was engaged in criminal activity because there were no restrictions in place to prevent Plaintiff from filming at the security checkpoint. [BIC at 43 §2]. In support, Plaintiff asserts that Judge Browning's "finding" that "…Mocek's right to film at the checkpoint is subject to reasonable time, place, and manner restrictions" is not contained in paragraph 52 of the Complaint, which Judge Browning referenced in his Memorandum Opinion on City Defendants' Motion To Dismiss. [*Id.* citing to RP at 241]. Judge Browning did not find that Plaintiff had provided this information in his Complaint, but rather that Plaintiff had alleged that he was told to stop filming, which Judge Browning determined was a reasonable restriction at a security checkpoint of the airport. [See RP at 241¶1 citing to RP19¶52]. TSA Defendants fully briefed the relevant federal regulations governing TSA's duties and the necessity of preventing and stopping patrons from interfering with TSA agents' duties. [See RP 54-56¶1, 65¶3, 66¶1]. Furthermore, Judge Browning referenced some of those regulations in his Memorandum Opinion related to Defendant City's Motion To Dismiss. [See 502]. Thus, Plaintiff's claim that there are no regulations at issue in this case negates a series of federal regulations that were enacted specifically to enhance security protocols used by TSA agents at security checkpoints of airports. Additionally, Plaintiff researched the regulations prior to this incident and was told by TSA spokespeople that he could film at security checkpoints but would not be permitted

to film monitors, interfere with TSA personnel while filming, that checkpoints were a "restricted area" and "just for ticketed passengers", and that he should make advance preparations if he wished to film security checkpoints at the airport based on local practices not available in writing, which he did not do. [ RP ¶¶35-39, 41-42]. Thus, Plaintiff was aware that regulations existed prior to this incident.

More to the point, however, Judge Browning's holding that City Defendants had reasonable suspicion that Plaintiff was engaged in criminal activity was based on the following: 1) the incident occurred at a potentially dangerous area of the airport -a security checkpoint; 2) TSA Defendants advised that Plaintiff was creating a disturbance by refusing to stop filming and was distracting TSA agents from their duties, particularly since TSA Defendants had no way of knowing whether Plaintiff was filming at this location for illicit purposes (e.g. by distracting TSA agents sufficiently to allow another person to slip through security during the encounter); 3) City Defendants observed Plaintiff refuse to comply with TSA Defendants' and City Defendants' orders that he cease filming; and 4) observed Plaintiff distract TSA agents away from their normal duties. [RP at 503]. Based on these factors, Judge Browning concluded that City Defendants had sufficient reasonable suspicion to request Plaintiff's ID. This determination is based on bedrock legal principles which state that the reasonable suspicion standard is "considerably less" than proof by a preponderance of the evidence or that required

for probable cause. *United States v. DeJear,* 552 F.3d 1196, 1200 (10th Cir. 2009) (quoting *United States v. Lopez*, 518 F.3d 790, 799 (10th Cir. 2008)). In determining whether reasonable suspicion exists, "…an officer 'need not rule out the possibility of innocent conduct;' he or she simply must possess 'some minimal level of objective justification' for making the stop." [RP 500 quotations omitted]. Furthermore, "…officers are not required to 'observe the equivalent of direct evidence of a particular specific crime' as long as 'there is reasonable suspicion of criminal activity.'" [RP 500 quotation omitted]. A reviewing Court must look objectively at the totality of the circumstances of which the officer was aware in making this determination. See *United States v. Arvizu,* 534 U.S. 266, 273 (2002). Courts judge police officers' "conduct in light of common sense and ordinary human experience, and [] accord deference to an officer's ability to distinguish between innocent and suspicious actions." *United States v. Williams,* 271 F.3d 1262, 1268 (10th Cir. 2001) (quotation and citation omitted).  Notably, particularly in places of public transport, such as airports, officers are given significant leeway in conducting brief investigative stops. See *Florida v. Bostick,* 501 U.S. 428, 431 (1991) ("Drug interdiction efforts have led to the use of police surveillance at airports, train stations, and bus depots. Law enforcement officers stationed at such locations routinely approach individuals, either randomly or because they suspect

in some vague way that the individuals may be engaged in criminal activity, and ask them potentially incriminating questions").

City Defendants had sufficient information from both TSA Defendants and their own observations to form a reasonable suspicion that Plaintiff was engaged in criminal activity. Plaintiff never advised City Defendants why he was filming, nor did he stop filming when asked to do so both TSA and by City Defendants. Such conduct at a security checkpoint is both unusual and suspicious and provided sufficient grounds for City Defendants to inquire further and request Plaintiff to produce his ID. Judge Browning's ruling that reasonable suspicion existed should be affirmed.

### B. Plaintiff's Failure to Produce Identification Provided Probable Cause to Justify His Lawful Arrest

Plaintiff asserts that Judge Browning erred in ruling that Plaintiff refused to provide his ID because he determined that Plaintiff did not have ID in his possession, told City Defendant Dilley that "…he did not have any ID to show him," and showed a TSA agent his boarding pass containing his name. [BIC at 43-44 §§2 &3]. The "validity of the arrest does not depend on whether the suspect actually committed a crime." *Michigan v. DeFillippo,* 443 U.S. 31, 36 (1979); *see also Wilder v. Turner,* 490 F.3d 810, 813 (10th Cir. 2007) ("Probable cause only requires a probability of criminal activity, not a prima facie showing of such activity"). "Probable cause exists if facts and circumstances within the arresting

officer's knowledge and of which he has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995); see also  3 Wayne R. LaFave, *Search and Seizure* § 5.1(c), at 23-24 (3d ed.1996).("W]hen an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable"). In short, where an objectively reasonable officer could conclude that the historical facts at the time of the arrest amount to probable cause, probable cause for the arrest is established. *Maryland v. Pringle,* 540 U.S. 366, 371 (2003). Most notably, if the Court finds that officers of reasonable competence could disagree whether there was probable cause to arrest Plaintiff, that is precisely the situation where qualified immunity is designed to give "…ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Greene v. Barrett*, 174 F.3d 1136, 1142 (10th Cir. 1999) (quoting *Hunter v. Bryant,* 502 U.S.224, 229 (1991) (*per curiam*) (internal quotation marks and citations omitted)). Officers are entitled to qualified immunity with respect to probable cause if they had "arguable probable cause"; they are not required to have had actual probable cause. *Harapat v. Vigil*, 676 F.Supp.2d 1250, 1263-64 (D.N.M. 2009) (citation omitted).

     In this appeal, Plaintiff does not allege that City Defendant Dilley knew that

Plaintiff gave his boarding pass to a TSA agent, nor does Plaintiff allege that he

provided that information to City Defendant Dilley when asked for his ID.

Furthermore, Plaintiff does not allege, nor could he, that City Defendant Dilley

knew that Plaintiff did not have ID on his person when he was asked for ID.

Finally, Plaintiff's assertion that he told City Defendant Dilley that he did not have

any ID to show him is not a clear communication to City Defendant Dilley that

Plaintiff did not have any ID on his person. [BIC 43]. In fact, after making that

statement to City Defendant Dilley, Plaintiff acknowledges that City Defendant

Dilley advised him that he "…was now part of a criminal investigation and was

required to give I.D." [BIC 11¶1].  When Mocek asked what he was being

investigated for, Dilley replied that it was for disturbing the peace. Dilley once

again said that he needed Mocek to provide him with I.D. "Mocek then said he was

going to remain silent and that he wanted to talk to an attorney." [RP 19 ¶54]. At

no point during this exchange does Plaintiff make it clear to City Defendant Dilley

that he does not have I.D. on his person. Instead, Plaintiff questioned the request

and then refused to cooperate or explain that he could not comply with the request.

Moreover, as Plaintiff readily admits, and as the transcript of the audio portion of

his filming (which is part of the record), demonstrates, Plaintiff purposefully gave

his I.D. to his traveling companion, Jesse Gallegos, and although Mr. Gallegos was

in ear-shot of the conversation and twice stated that he was "bearing witness"

while the encounter was unfolding, at no point did Plaintiff ask Mr. Gallegos to give him back his I.D. [See RP 17 ¶43, 324¶¶8,14]. Ultimately though, as noted above, determining probable cause "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford,* 543 U.S.146, 152 (2004).

Judge Browning's determination that probable cause to arrest Plaintiff for concealing his identification under state law was correct under these facts. Under New Mexico law NMSA (1978) §30-22-3, concealing one's identity is a misdemeanor crime defined as follows:

> Concealing identity consists of concealing one's true name or identity, or disguising oneself with intent to obstruct the due execution of the law or with intent to intimidate, hinder or interrupt any public officer or any other person in a legal performance of his duty or the exercise of his rights under the laws of the United States or of this state.

By Plaintiff's own admission, he did not provide his ID, questioned the reason for asking for the I.D., and then refused to cooperate by stating that he wanted to remain silent and speak with an attorney. [RP 19 ¶54]. An officer is entitled to qualified immunity when the officer, who has formed reasonable suspicion of criminal activity, requests that a person produce ID and the individual refuses to comply with the request. [See RP 505 ¶4 (citing *Albright v. Rodriguez,* 51 F.3d 1531 (10th Cir. 2002) ("holding that a sheriff's sergeant was entitled to qualified immunity from a §1983 claim alleging unreasonable arrest, where the

37

sergeant had reasonable suspicion to ask the plaintiff for ID, and the plaintiff's

refusal to provide it constituted probable cause for the plaintiff's arrest for

concealing identity); see also *State v Dawson*, 127 N.M. 472, 477 (N.M. Ct. App.

1999) (holding that passive refusal to provide ID can constitute the offense of

concealing identity)]. Furthermore, an officer is entitled to arrest a person who

commits a misdemeanor in the officer's presence under New Mexico law. [RP 506

citing *Tanner v. San Juan Cnty. Sheriff's Office*, 864 F.Supp. 2d 1090, 1124 n.23

(D.N.M. 2012) (Browning J.) (parenthetical and remaining citations omitted)].

Judge Browning's determination that probable cause to arrest Plaintiff existed

should be affirmed.

## C. City Defendants' Alleged Subjective Motives Are Irrelevant To The Probable Cause Analysis

Plaintiff's argument that the arrest was pretextual [BIC at 44 §4] is also

untenable because, as Judge Browning held, even if Plaintiff's allegations were

adopted as true, such a contention is irrelevant if probable cause to arrest Plaintiff

for the commission of a crime is demonstrated. [RP 499 ¶1 (citing *Howards v.*

*McLaughlin*, 634 F.3d 1131, 1142 (10th Cir. 2011) ("'Under the Fourth

Amendment, the constitutionality of an arrest does not depend on the arresting

officer's state of mind'")]; see also *Apodaca v. City of Albuquerque,* 443 F.3d

1286, 1289 (10th Cir.2006) ("Those are lawfully arrested whom the facts known to the arresting officers give probable cause to arrest...").[2]

In relation to Plaintiff's contention that numerous misstatements were made in the police report, thereby demonstrating that the arrest was pretextual [BIC 45¶3], this argument is equally unpersuasive, because even if Plaintiff's allegations were taken as true, if probable cause to arrest Plaintiff existed, "...the officer's 'subjective characterization of his [Plaintiff's] actions is irrelevant'" in determining whether an arrest was lawful. *United States v. Rodriguez*, 836 F. Supp. 2d 1258, 1274 (D.N.M. 2011 (Browning, J.) (quoting *United States v. Ceballos*, 335 F. App'x  226, 227-29 (2009)).

Finally, Plaintiff's assertion that the City Defendants attempted to destroy the video tape does not support his pre-textual arrest claim or demonstrate a Fourth

---

[2] The Tenth Circuit has also rejected the pretextual analysis under the Fourth Amendment in the context of a Terry stop. In *United States v. Botero- Ospina*, 71 F.3d 783 (10th Cir. 1995) (en banc), the Court expressly overturned *United States v. Guzman*, 864 F.2d 1512, 1515 (10th Cir.1988), where the Tenth Circuit had defined a pretextual traffic stop as one in which "the police use a legal justification to make the stop in order to search a person or place, or to interrogate a person, for an unrelated serious crime for which they do not have the reasonable suspicion necessary to support a stop"). *Botero* held that this standard had proven unworkable because it had been applied in an inconsistent and sporadic fashion and a number of other circuits had rejected it. *Botero* at 786-787. The *Botero* Court held that a traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring. *Id*. In adopting that standard, *Botero* also reasoned in part that it is "irrelevant that the officer may have had other subjective motives for stopping the vehicle. Our sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated "any one of the multitude of applicable traffic and equipment regulations" of the jurisdiction. *Id*. quoting *Delaware v. Prouse*, 440 U.S. 648, 661 (1979).

Amendment violation because probable cause for his arrest existed. Additionally, by Plaintiff's own admission, the actual evidence seized, namely the video camera containing the video footage of the incident, was used at Plaintiff's criminal proceeding and according to Plaintiff, was the only evidence he used to secure an acquittal.  (BIC at 18¶8, 19¶1].  Thus, even if City Defendants attempted to destroy the video footage, he was able to use it, rendering his claim purely speculative and irrelevant to this inquiry.

Ultimately, Judge Browning's conclusion that City Defendants had probable cause to arrest Plaintiff for concealing his identity is supportable when viewed in the context of Plaintiff's allegations and the governing standards. Accordingly, this Court should affirm Judge Browning's holding that City Defendants had probable cause to arrest Plaintiff for concealing his identity under New Mexico law.

**D. Probable Cause Does Not Require a Thorough Investigation**

Plaintiff contends that even if there was not a pre-textual arrest, City Defendants would be liable for wrongfully arresting him. [BIC 46-47§C1-2]. Plaintiff again relies on *Tobey v. Jones*, 706 F.3d 379 (4th Cir. 2013), without explanation. Oddly, in *Tobey*, the plaintiff did not appeal the district court's ruling that there was no Fourth Amendment violation and the Court of Appeals stated that "…the district court's decision to dismiss Mr. Tobey's Fourth Amendment claim is inconsequential to this Court's finding that Mr. Tobey asserted a plausible First

Amendment claim." *Id.* at 390.Plaintiff also cites to *Sevigny v. Dicksey*, 846 F.2d

953, 957 (4th Cir. 1988) for the proposition that it would be appropriate to consider

whether City Defendants should have engaged in further investigation before

arresting Plaintiff. [BIC at 47 ¶2]. Plaintiff contends that *Sevigny* applied an

objective test to determine whether a reasonable officer in the place of the

defendant would have perceived the conduct at issue as constituting probable cause

for an arrest. *Id.* City Defendants are puzzled, since that is the standard by which

Judge Browning found that probable cause for the arrest existed. [RP 474-475§1].

City Defendants had sufficient information to form probable cause to arrest

Plaintiff based on the information they received from TSA agents, their own

observations of Plaintiff's failure to comply with TSA Defendants, their directives

that he stop filming, and his refusal to produce ID when it was requested. An

officer in City Defendant Dilley's position would have reasonably believed that

probable cause to arrest Plaintiff existed because he appeared to be intentionally

concealing his identity. That is all that the law requires of law enforcement

officers, even if the belief is later determined to be mistaken. In contrast, Plaintiff

appears to be operating under the mistaken belief that his self-described "non-

disruptive" conduct did not provide probable cause to cause his arrest. [BIC at

47¶2, 48 ¶¶1 & 2]. As Judge Browning correctly observed, Plaintiff's recording

distracted TSA agents, could have raised security concerns at the screening

41

checkpoint, and federal regulations prohibit passengers from interfering with or tampering with screening protocol at security checkpoints. [*Id.* citing 49 C.F.R. §1540.109 & 67 Fed. Reg. 8344]. Judge Browning also observed, based on Plaintiff's allegations, that he diverted the attention of two TSA agents and three police officers, City Defendants observed Plaintiff refuse to comply with the TSA agents' reasonable order, Plaintiff acknowledged that he contested the City Defendants' statement that he could not film at a screening checkpoint, and after Defendant Dilley request that Plaintiff provide ID, he did not comply but rather asserted that he "he had not disturbed the peace." [*Id.* and 503]. Plaintiff's contention that the police report contained false information, that there was no evidence that he disturbed other patrons, [BIC at 48¶¶1 &2, 49¶3] is irrelevant to this analysis. Plaintiff cites to *Hiibel v. New Mexico*, 542 U.S. 177, 187-188 (2004), to support his assertion that there was no reason to request his ID, and that the high Court has struck down statutes that require a suspect to provide "credible and reliable" ID. [BIC at *Id.*]. Notably, in *Hiibel*, the Court held that a Nevada statute which required an individual to identify himself while he was being detained was constitutional. *Hiibel* is instructive in its reasoning regarding the need to request identification during a *Terry* stop, as follows:

> Our decisions make clear that questions concerning a suspect's identity are a routine and accepted part of many *Terry* stops. See *United States v. Hensley,* 469 U.S. 221, 229 [](1985) ("[T]he ability to briefly stop [a suspect], ask questions, or check identification in the absence of probable cause promotes

42

the strong government interest in solving crimes and bringing offenders to justice")

Plaintiff's reliance on this case is bewildering, because Plaintiff has not challenged the constitutionality of the concealing identity statute at issue here. Furthermore, if anything, *Hiibel* supports the constitutionality of requesting ID once reasonable suspicion arises. In the end, Judge Browning's holding that City Defendants had probable cause to arrest Plaintiff for concealing his ID should be affirmed.

### E. Plaintiff Has Failed to Demonstrate That Clearly Established Law Supports His Fourth Amendment Claim

Judge Browning held that Plaintiff failed to demonstrate that the City Defendants' conduct violated clearly established law in the Tenth Circuit or the Supreme Court. [RP 507¶2]. Judge Browning noted that the orders by TSA and City Defendants to stop filming were "…reasonable under the circumstances" pursuant to 67 Fed. Reg. 8344, and that Plaintiff had failed to demonstrate that City Defendants' conduct violated clearly established law in the Tenth Circuit or Supreme Court [*Id.*¶2]. Accordingly, Judge Browning granted Defendants qualified immunity on Plaintiff's Fourth Amendment claim. [*Id.* at 508¶1].

Plaintiff repeats his contention that City Defendants were required to engage in additional investigation before arresting him under the objective standard utilized in Fourth Amendment cases. [See BIC 50-52]. This contention is

43

incorrect. In this Circuit, officers are not required to forego arresting an individual based on the initial discovery of facts demonstrating probable cause simply because the person arrested has a differing view or explanation of the incident, or claims that a more diligent investigation should have occurred prior to the arrest. See e.g. *Romero v. Fay*, 45 F.3d 1472, 1478 (10th Cir. 2005)  (holding that "…officer's failure to question the plaintiff's alibi witnesses prior to the arrest did not negate probable cause") and fn. 3 (citing *Marx v. Gumbinner*, 905 F.2d 1503, 1597 fn. 6 (11th Cir. 1990) ("[The police officers] were not required to forego arresting [plaintiff] based on initially discovered facts showing probable cause simply because [plaintiff] offered a different explanation" as well as other circuit opinions supporting this holding). Plaintiff's assertion that pursuant to *Romero*, City Defendant should have conducted a further investigation [BIC at 51¶1], is not supportable. City Defendants arrested Plaintiff not based solely on the information provided by the TSA Defendants, but rather, as Plaintiff admits, after personally observing Plaintiff refuse to comply with both TSA and City Defendants' orders, and then refusing to cooperate or provide ID. [See RP at 19 ¶¶51-54]. Under New Mexico law, police officers are authorized to arrest an individual who commits a misdemeanor in their presence. [See RP 506 citing *Tanner v. San Juan Cnty. Sheriff's Office*, 864 F. Supp. 2d 1090, 1124 n.23 (D.N.M. 2012) (Browning J.) ("recognizing that "New Mexico…follows the misdemeanor arrest rule that an

44

officer may only arrest without a warrant one guilty of a misdemeanor if committed in his presence") (quoting *City of Santa Fe v. Martinez*, 2010-NMSC-033 ¶6, 148 N.M. 708, 710-11 [] (2010)). Plaintiff's statement that he was fully cooperative and should have been allowed to board the plane or asked to leave the airport is not the proper basis to determine if probable cause to arrest Plaintiff exists. Rather, Plaintiff's allegations, which demonstrate that the City Defendants observed Plaintiff's conduct and his refusal to comply with their directives, is the proper basis.

Moreover, the Tenth Circuit has previously determined that there is no Tenth Circuit or United State Supreme Court case holding that arresting a person for refusing to provide identification is a violation of the Fourth Amendment. See *Albright v. Rodriguez,* 51 F.3d 1531, 1537 (10th Cir. 1995) (reasoning that the Supreme Court has specifically refused to determine whether an individual can be arrested for refusing to identify himself in the context of a lawful investigatory stop in two separate cases) (citing to *Brown v. Texas,* 443 U.S. 47 (1979); *Kolender v. Lawson,* 461 U.S. 352 (1983)). *Albright* held that it is not clearly established that an arrest based on refusal to provide identification is a Fourth Amendment violation and noting that sister circuits have not found that it is. *Id.* The District of New Mexico has applied the same analysis. In *Nagol v. State of N.M.*, 923 F.Supp. 190, 191 (D.N.M. 1996), a person arrested for failing to provide identification to a

requesting officer filed a civil rights action against the officer. The Honorable

Bruce Black held that the police officer did not violate arrestee's clearly established

rights when he placed arrestee under arrest for failing to provide proper

identification, in violation of state law, entitling officer to qualified immunity. *Id.*

In reaching that decision, Judge Black reasoned that:

> It stretches the imagination to see how a police officer who applies a
> presumably valid law in a valid fashion could be said to have 'violated a
> person's clearly established constitutional right' of which 'any reasonable
> official would have known.' The duty of a police officer is to enforce the
> laws passed by the legislature, not to question the validity of these laws. A
> police officer cannot be held liable under § 1983 for properly enforcing the
> laws the officer is sworn to uphold. *Id* at 192.

The fact that there is no clearly established law in either the Tenth Circuit or

the United States Supreme Court holding that there is a Fourth Amendment right to

refuse to provide identification to an officer during the course of a lawful

investigatory stop, is proof positive that Plaintiff does not have a viable Fourth

Amendment claim in this case and City Defendants are entitled to qualified

immunity.

## V.    DISMISSAL OF PLAINTIFF'S ABUSE OF PROCESS CLAIM WAS APPROPRIATE

Plaintiff contends that Judge Browning's dismissal of his malicious

abuse of process claim was improper because City Defendants had no probable

cause to arrest him, and because the arrest was pretextual, the Court should have

allowed him to proceed on a procedural impropriety theory. [BIC at 46§5]. Judge

Browning considered this claim based on Plaintiff's contention that no probable cause existed to arrest him. [See RP 509§V]. Furthermore, while Plaintiff contends that "[t]he Court admitted that Plaintiff might be able to successfully amend this claim, but "refused to let it happen" citing to RP 509-510, [BIC at *Id.*], this is an erroneous conclusion to draw from Judge Browning's decision. While Judge Browning did state that Plaintiff's allegation regarding the alleged attempt to destroy the videotape might serve as the basis for a malicious abuse of process claim under the procedural impropriety theory, he also expressed doubt that such a claim could be heard, because the $75,000 amount-in-controversy requirement for diversity jurisdiction was not asserted, and he also expressed doubt that Plaintiff could proceed under state law . [See BIC 509-510 fn.9.  Judge Browning also expressed doubt that Plaintiff's alleged injury could be actionable under state law because the injury alleged might not be encompassed in the express tangible injuries contained in the statute. [*Id.* at 510¶5]. Indeed, since Plaintiff used the very videotape that he alleges was tampered with at his trial, it is highly doubtful that he could demonstrate a tangible injury under NMSA (1978) §41-4-12 based on the alleged tampering of his video camera. Ultimately though, Plaintiff did not develop the procedural impropriety theory in any meaningful way.

In terms of Judge Browning's dismissal of this claim, under the probable cause theory, Plaintiff is forestalled from proceeding with this claim if, as in this

case, probable cause to arrest Plaintiff existed.  In order to state a viable claim for this tort, Plaintiff must prove "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Novitsky v. City of Aurora,* 491 F.3d 1244, 1255–56 (10th Cir. 2007) (emphasis added). Where probable cause for the arrest is established, this claim fails. See e.g. *Wilkins v. DeReyes,* 528 F.3d 790, 801(10th Cir. 2008) (Probable cause is a requirement for a malicious prosecution claim). Accordingly, Judge Browning's determination that probable cause existed for Plaintiff's arrest precludes Plaintiff from proceeding with this claim. Judge Browning's dismissal of this claim should be affirmed.

## VI.   PLAINTIFF HAS FAILED TO ALLEGE A VIABLE MUNICIPAL LIABILITY CLAIM

Plaintiff contended in his Complaint that the City, through its policy makers, had a policy or custom of prohibiting filming in public areas of the airport, retaliated against individuals who engaged in such activities, failed to train and supervise officers to prevent such conduct, were indifferent to these violations, and were the moving force behind the violations. [RP 31 ¶¶105-106, 32 ¶¶ 107-110].

In dismissing Plaintiff's municipal liability claim, Judge Browning held that absent a violation of Plaintiff's constitutional rights, Plaintiff's municipal liability

48

claim fails, "…even if the City or AAPD had 'in force and effect a policy, practice, or custom' because such a policy was not the proximate or legal cause of any injury to Plaintiff." [RP 514 §VIII]. This conclusion was based on the bedrock elements that a plaintiff must allege in order to state a viable claim, which are: "1) that an officer committed an underlying constitutional violation; 2) that a municipal policy or custom exists; and 3) that there is a direct causal link between the policy or custom and injury alleged." *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006), rev'd on other grounds, 535 F.3d 1198 (10th Cir. 2008); *Trigalte v. City of Tulsa,* 239 F.3d 1150, 1151 (10th Cir. 2001) (a city cannot be held liable for arbitrary or consciously shocking action if there are no unconstitutional acts by an individual officer). Plaintiff's failure to demonstrate a constitutional violation is dispositive of this issue. Furthermore, Plaintiff cannot establish the necessary causal link between an unconstitutional policy and an injury to Plaintiff. [See RP at 477 citing to *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. at 404 (1997) ("[I]t is not enough for a §1983 plaintiff merely to identify conduct property attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." (emphasis in the original); see also RP 479 citing to *Dodds v. Richardson*, 614 F.3d at 1200 (explaining that proof of a "deliberate plan by the named defendants" is

necessary to establish a causal link under a supervisory liability theory (quoting *Rizzo v. Goode*, 423 U.S. 362 (1976)].

Plaintiff asserts that if City Defendants' acts are protected by qualified immunity, Plaintiff may still proceed against the municipal defendant. [BIC 52§V]. In support, Plaintiff cites to *Medina vs. City of County of Denver*, 960 F.2d 1493 (10th Cir. 1992) and *Barber v. City of Salem, Ohio*, 953 F.2d 232 (6th Cir. 1992) but does not explain how these cases support his claim. *Medina* is distinguishable from this case because unlike Judge Browning's rulings, which involved both failure to establish a constitutional claim and failure to demonstrate clearly existing law on any of the claims Plaintiff alleged, the *Medina* Court affirmed summary judgment for the individual officers on the clearly established prong only. *Id. a*t 1499. *Medina* analyzed Plaintiff's deliberate indifference claim specifically because the finding of qualified immunity did not involve a constitutional violation finding. *Id.* In *Barber*, the Court held that a municipality may be held liable "… if the actions complained of rise to the level of constitutional violations in light of present law." *Id.* at 238 (citing to *Owen v. City of Independence,* 445 U.S. 622, 657-58 (1980) (which held that although individuals were entitled to qualified immunity in a 1983 action for discharge of a police chief without a hearing after publicly denouncing him as a thief, the city was nonetheless liable even though the law upon which it relied was decided two months after the action involving the police chief

occurred). *Barber* is not applicable to this case because the law has not changed since the incident involving Plaintiff occurred, nor has Plaintiff cited to any precedents in the Tenth Circuit or Supreme Court that would be applicable to his municipal liability claim in this case. Moreover, Plaintiff has not alleged sufficient facts demonstrating that an alleged unconstitutional custom or policy was the legal cause of injuries claimed. Judge Browning's holding is a legally supportable decision that should be affirmed.

## VII.    PLAINTIFF'S REQUEST FOR DECLARATORY JUDGMENT IS MISPLACED

The *de novo* standard is utilized where a challenge is based on a district court's determination that no constitutionally cognizable controversy as a matter of law exists. *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008).

In his Complaint, Plaintiff requested that the Court issue a declaratory judgment that all  Defendants violated his First and Fourth Amendment Rights. [RP 32-33 ¶112-113 and 113-Prayer For Relief]. There are three elements to Article III standing: 1) injury-in-fact; 2) causation; and 3) redressability. *Utah Animal Rights Coalition v. Salt Lake City Corp*., 371 F.3d 1248, 1255 (10th Cir. 2004 (citation omitted). An injury-in-fact is an "invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, i.e., not conjectural or hypothetical." *Id., quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Judge Browning rejected Plaintiff's request on the grounds that

Plaintiff did not suffer a constitutional violation or injury, and even if he had

properly alleged a constitutional violation, all of Plaintiff's claims, with the

exception of his First Amendment claim, involved one encounter, rather than

conduct that would likely reoccur in the future. [RP at 514-515 citing in part to

*Utah Animal Rights Coal v. Salt Lake City Corp.*, 371 F.3d 1248, 1266 (10th Cir.

2004) (McConnel, J., concurring) ("[A] declaratory judgment action involving

past conduct that will not recur is not justiciable"].  Furthermore, Judge Browning

determined that even if, pursuant to a governmental policy, ongoing First

Amendment violations at security checkpoints were to occur, the policies at issue

would be determined by TSA rather than the City. [*Id.*¶2]. Ultimately though,

Judge Browning's holding was based on the fact that Plaintiff suffered no injury

and as such, no remedy was available to him. [*Id.*].

Plaintiff contends that a First Amendment infringement and its chilling

effect is sufficient evidence of a continuing injury to invoke the declaratory

judgment act. [RP 53¶2]. In support, Plaintiff cites in part to *Meese v. Keene*, 481

U.S. 465, 472 (1987),  for the proposition that sufficient injury for standing

purposes may be found even though a direct effect on First Amendment activity

may not be alleged. [RP 53¶2].  *Meese* held that the senator had standing to

challenge the use of the term political propaganda as a First Amendment violation

because the senator had demonstrated that labeling the films in this way:

52

…would substantially harm his chances for reelection and adversely affect his reputation in the community. Even if he could minimize these risks by providing viewers with a statement about the high quality of the films and his reasons for agreeing with them, the statement would be ineffective among those citizens who shunned the films as "political propaganda." Moreover, the need to take such affirmative steps would itself constitute a cognizable injury to appellee. *Id.*

*Meese* also noted that had the senator merely alleged a subjective chilling effect on his First Amendment rights, he would not have standing to pursue the claim. *Id.* at 473. *Laird v. Tatum,* 408 U.S. 1, 14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm; the federal courts established pursuant to Article III of the Constitution do not render advisory opinions" (quoting *United Public Workers of America (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947).

Plaintiff's First Amendment allegation is a subjective claim. Plaintiff is not prevented from filming inside the airport or at the security checkpoints. Rather, as Plaintiff acknowledges, advanced notice to arrange for the filming is all that is required. (RP 16¶37-41). Moreover, as Judge Browning pointed out, Plaintiff's other claims involve a one-time incident, rather than demonstrating an ongoing adverse affect rising to the level of a cognizable injury on Plaintiff. Plaintiff's reliance on *Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947 (1984) is equally misplaced. The Court in that case, stated:

53

"Litigants,[] are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." (citation omitted). *Id.* at 956,57.

Plaintiff is not challenging a statute in this case, nor is he challenging anything other than his subjective assertion that his First Amendment rights have been chilled. There is no basis for this Court to believe that any other person will refrain from exercising their rights, particularly since there is no ban on filming at the airport. Plaintiff's claim that he has standing to pursue a declaratory judgment is not supportable because he has failed to state a cognizable constitutional injury.

## VIII.    PLAINTIFF'S REQUEST TO AMEND HIS COMPLAINT IS IMPROPER

The denial of a motion to amend a complaint is reviewed for an abuse of discretion. *Long v. United States,* 972 F.2d 1174, 1183 (10th Cir.1992). Plaintiff seeks leave to amend his Complaint but has not provided any legal or other basis for this request and has not stated what his additional claims would be. [RP at 54§VII].  As discussed *supra* in the summary of the argument, this Court routinely declines to consider arguments that are either not raised or are inadequately presented in an appellant's opening brief. Even if this Court were to consider Plaintiff's request, however, presuming that Plaintiff seeks to add a Fifth and Sixth Amendment claim, Judge Browning's determination that Plaintiff failed to state a viable Fifth or Sixth Amendment claim [see [RP 292-315 & 316-338]

was appropriate and should be affirmed. In relation to Plaintiff's Fifth Amendment claim [RP 312§B], Judge Browning held that an officer's demand that a suspect identify himself or provide basic information does not violate a suspect's Fifth Amendment or Miranda rights.[RP 512]. Judge Browning also determined that City Defendants had reasonable suspicion to request Plaintiff's identification and were acting under their investigatory authority in so doing, entitling them to qualified immunity on this claim. [*Id.*]. Respecting Plaintiff's Sixth Amendment claim, [RP 309§B] Judge Browning correctly determined that "…A defendant who is acquitted cannot be said to have been deprived of the right to a fair trial." [RP 130¶3 quoting *Morgan v. Getz*, 166 F.3d 1307, 1310 (10th Cir. 1999). Furthermore, since Plaintiff used the videotape at his trial and was acquitted, Judge Browning correctly held that his Sixth Amendment claim was not viable. [RP at 512 ¶2]. Presuming that Plaintiff seeks to amend the Complaint on the same grounds, Judge Browning's holdings on these prospective claims should be affirmed. Plaintiff's further request that he be allowed to add a copy of the recording via transcript should also be denied because it does not render Plaintiff's allegations plausible.

## IX.    PLAINTIFF'S REQUEST TO HAVE A NEW JUDGE APPOINTED SHOULD BE DENIED

Plaintiff requests that this Court appoint a new judge to preside over his case because Judge Browning allegedly prematurely decided legal issues involving the City Defendants in its Memorandum Opinion regarding the TSA

Defendants Motion To Dismiss, "without seeking any briefing from Mocek's counsel." [BIC 55]. To begin with, Plaintiff submitted response briefs and supplemental pleadings in support of his opposition to both Motions To Dismiss [RP 85-113, 292338, 356-380]. Second, if Plaintiff felt that Judge Browning was biased in some way, he could have elected to file a motion to recuse pursuant to 28 U.S.C. § 455 or 28 U.S.C.A. § 144 in the district court, and was required to do so in the first instance in the district court. Third, "a motion to recuse cannot be based solely on adverse rulings." *Willner v. University of Kansas,* 848 F.2d 1023 (10th Cir. 1988) (citing *Hamm v. Members of the Board of Regents,* 708 F.2d 647, 651 (11th Cir.1983) (motion to recuse pursuant to sections 455 and 144); *United States v. Bray,* 546 F.2d 851, 857 (10th Cir.1976) (motion to recuse pursuant to section 144). Plaintiff's request is based solely on Judge Browning's rulings. [See RP 54-55 ¶VIII generally]. Finally, a motion to recuse must be timely filed. *See Singer v. Wadman,* 745 F.2d 606, 608 (10th Cir.1984) (motion to recuse under both 28 U.S.C. §§ 144 and 455(a) was untimely) *cert. denied,* 470 U.S. 1028. Plaintiff obviously has not met this requirement and cannot side step this requirement by seeking to solicit this Court for the relief he should have sought in the Court below. Plaintiff's request should be denied because it is groundless and without merit.

## <u>CONCLUSION</u>

Judge Browning's exhaustive Memorandum Opinion regarding City

Defendants' Motion To Dismiss and his subsequent dismissal of Plaintiff's claims should be affirmed because the legal principles which underlie Judge Browning's holdings are legally sound. Plaintiff has failed to demonstrate he has met the plausibility threshold, or set forth clearly established law supporting any of his contentions. City Defendants are entitled to the relief granted, and respectfully request that Judge Browning's holdings be affirmed in their entirety.

Dated: November 10, 2014

Respectfully submitted,

By:  */s/ Renni Zifferblatt*
     Renni Zifferblatt
     Jeffrey L. Baker
     THE BAKER LAW FIRM
     20 First Plaza NW, Suite 402
     Albuquerque, NM 87102
     Telephone: (505) 247-1855
     renni@bzjustice.com
     jeff@bzjustice.com

     *Attorneys for Defendants-Appellees*
     *City of Albuquerque*

## CERTIFICATE OF COMPLIANCE WITH RULE 31.3(D)

City Defendants-Appellees, pursuant to 10th Cir. R. 31.3(D) have filed their

Answer Brief separate and apart from the TSA Defendants-Appellees because they

are a governmental entity.

Dated: November 10, 2014

By: */s/ Renni Zifferblatt*
                Renni Zifferblatt
                Jeffrey L. Baker
                THE BAKER LAW FIRM
                20 First Plaza NW, Suite 402
                Albuquerque, NM 87102
                Telephone: (505) 247-1855
                renni@bzjustice.com
                jeff@bzjustice.com

                *Attorneys for Defendants-Appellees*
                *City of Albuquerque*

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
### Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

> [**X**] this brief contains 13,967 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

> [ ] this brief uses a monospaced typeface and contains <state the number of> lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> [**X**] this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14 point font, Times New Roman, or

> [ ] this brief has been prepared in a monospaced typeface using <state name and version of word processing program> with <state number of characters per inch and name of type style>.

Dated: November 10, 2014  By:  */s/ Renni Zifferblatt*
           Renni Zifferblatt
           Jeffrey L. Baker
           THE BAKER LAW FIRM
           20 First Plaza NW, Suite 402
           Albuquerque, NM 87102
           Telephone: (505) 247-1855
           renni@bzjustice.com
           jeff@bzjustice.com

           *Attorneys for Defendants-Appellees*
           *City of Albuquerque*

**COC-1** Certificate of Compliance – 6/2011

## <u>CERTIFICATE OF DIGITAL SUBMISSION</u>

I hereby certify that with respect to the foregoing

### CITY OF ALBUQUERQUE DEFENDANTS' ANSWER BRIEF

(1) all required privacy redactions have been made per 10th Cir. R. 25.5;

(2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents; and

(3) the digital submissions have been scanned for viruses with the most recent version of McAfee Security Scanner, and according to the program are free of viruses.

Dated: November 10, 2014        By:  */s/ Renni Zifferblatt*
                                                    Renni Zifferblatt
                                                    Jeffrey L. Baker
                                                    THE BAKER LAW FIRM
                                                    20 First Plaza NW, Suite 402
                                                    Albuquerque, NM 87102
                                                    Telephone: (505) 247-1855
                                                    renni@bzjustice.com
                                                    jeff@bzjustice.com

                                                    *Attorneys for Defendants-Appellees*
                                                    *City of Albuquerque*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this <u>10</u><sup>th</sup> day of November, 2014, the foregoing was electronically served through the CM/ECF filing system and served via e-mail to the following:

William M. Simpich
<u>bismpich@gmail.com</u>

Mary Louise Boelcke
<u>mlboelcke@gmail.com</u>

James Wheaton
<u>wheaton@thefirstamendment.org</u>

Edward J Martin
<u>edward.martin2@usdoj.gov</u>

Cherokee D.M. Melton
<u>cmehon@thefirstamendment.org</u>

Manuel Lucero
<u>manny.lucero@usdoj.gov</u>

H. Thomas Byron III
<u>H.Thomas.Byron@usdoj.gov</u>

I hereby certify that on November 10, 2014, I have mailed or served the foregoing by mail, postage pre-paid to the following:

James Wheaton
First Amendment Project
1736 Franklin Street, 9th Floor
Oakland, CA 94612

William Simpich
Law Office of William Simpich
1736 Franklin Street
10th Floor
Oakland, CA 94612

Mary Louise Boelcke
Law Office ofMary Louise Boelcke
6707 Academy Road NE, Ste A
Albuquerque, NM 87109

Cherokee D.M. Melton
First Amendment Project
1736 Franklin Street, 9th Floor
Oakland, CA 94612

Edward J Martin
US Department of Justice
Civil Division
PO Box 7146
Washington, DC 20044

Manuel Lucero
US Attorney's Office
District of New Mexico
PO Box 607
Albuquerque, NM 87103

H. Thomas Byron III
US Department of Justice
Civil Division
950 Pennsylvania Ave., NW
Washington, DC 20530

Dated: November 10, 2014

By: _/s/ Renni Zifferblatt_____
Renni Zifferblatt
Jeffrey L. Baker
THE BAKER LAW FIRM
20 First Plaza NW, Suite 402
Albuquerque, NM 87102
Telephone: (505) 247-1855
renni@bzjustice.com
jeff@bzjustice.com

*Attorneys for Defendants-Appellees*
*City of Albuquerque*