**Case No: 14-2063**

**TENTH CIRCUIT COURT OF APPEALS**

Phillip Mocek,

      Plaintiff - Appellant,

v.

City of Albuquerque, Albuquerque Aviation Police
Department, Marshall Katz, in his official capacity
as Chief of Police of the Albuquerque Aviation
Police Department, Jonathan Breedon, Gerald Romero,
Anthony Schreiner, Robert F. Dilley, a/k/a Bobby
Dilley, Landra Wiggins, Julio De La Pena, and Does
1-25, inclusive,

      Defendants-Respondents,

**APPELLANT'S REPLY BRIEF**

Appeal From: United States District Court for the District of New Mexico
Trial Judge: James O. Browning, U.S. District Judge
District Court Case No: 11-1009-JB-KBM

| | |
|---|---|
| William Simpich | James R. Wheaton |
| Attorney at Law | Cherokee Melton |
| Law Office of William Simpich | First Amendment Project |
| 1736 Franklin Street, Tenth Floor | 1736 Franklin Street, Ninth Floor |
| Oakland, CA 94612 | Oakland, CA 94612 |
| Telephone: (510) 444-0226 | Telephone: (510) 208-7744 |

Mary Louise Boelcke
P.O. Box 31033
Albuquerque, NM 87190
Telephone: (505) 804-1632

Attorneys for Plaintiff-Appellant, Phillip Mocek

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | i |
| I.    PURSUANT TO CLEARLY ESTABLISHED LAW, DEFENDANTS VIOLATED PLAINTIFF'S FIRST AMENDMENT RIGHTS | 1 |
| A. The District Court Erred When It Reasoned That The Location of Mocek's Filming Dictated Whether He Was Engaged In Constitutionally Protected Activity | 1 |
| 1. Location Does Not Define Every First Amendment Analysis | 2 |
| 2. The Injuries Caused By the Defendants' Retaliatory Actions Had An Objectively Chilling Effect and Were Not Trivial | 10 |
| 3. Mocek's Well-Pleaded Complaint Makes Clear That Defendants' Actions were Substantially Motivated As A Response To His Filming | 12 |
| A. Defendants are Not Entitled to Qualified Immunity | 13 |
| I.    PURSUANT TO CLEARLY ESTABLISHED LAW, DEFENDANTS VIOLATED PLAINTIFF'S FOURTH AMENDMENT RIGHTS | 16 |
| A. City Defendants Had No Reasonable Suspicion to Request Plaintiff's Identification | 16 |
| B. Even if the court decides that a Terry stop was justified, Defendant Dilley never asked Plaintiff for his name – only his ID. | 20 |
| C. There was no probable cause for Mocek's arrest | 21 |

D. There was an obligation to conduct a reasonable investigation        22

E. It is clearly established that there is no qualified
   immunity for the 4th Amendment violations of
   the Defendants                                                       24

CONCLUSION

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

CERTIFICATE OF DIGITAL SUBMISSION

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

Page

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)                                    2

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)                      2

*Berner v. Delahanty,* 129 F.3d 20 (1st Cir. 1997)                       3,6

*Clark v. Comm. for Creative Non-Violence,* 468 U.S. 288 (1984)             3

*Citizens United v. Fed. Election Comm'n,* 558 U.S. 310 (2010)             4

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,* 473 U.S.
788 (1985)                                                                 3

*Delaware v. Prouse,* 440 U.S. 648 (1979)                                  21

*DeLoach v. Bevers,* 922 F.2d 618 (10th Cir. 1990)                         9

*Dunaway v. New York,* 442 U.S. 200, 60 L. Ed. 2d 824, 99 S.
Ct. 2248 (1979)                                                           19

*Fordyce v. City of Seattle,* 55 F.3d 436 (9th Cir.1995)                  10

*Glik v. Cunniffe,* 655 F.3d 78 (1st Cir. 2011)                        10,23

*Hartman v. McBeth,* 598 F.3d 708 (10th Cir. 2010)                        11

*Hiibel v. Sixth Judicial District Court,* 542 U.S. 177 (2004)            16

*Hunter v. Bryant,* 502 U.S. 224 (1991)                                   22

*Int'l Soc. for Krishna Consciousness, Inc. v. Lee,* 505 U.S.
672 (1992)                                                                 4

*Journal Pub. Co. v. Mechem,* 801 F.2d 1233 (10th Cir. 1986)             2,9

*Ken v. City of Loveland,* 661 F. 3d 498 (10th Cir. 2011)                  8

*Kolender v. Lawson, 461 US 352 (1983)*                                    20

*Mills v. Alabama,* 384 U.S. 214 (1966)    14

*Minneapolis Star & Tribune Co. v. Minnesota Comm'r of
Revenue,* 460 U.S. 575 (1983).    4

*Pell v. Procunier*, 417 U.S. 817 (1974)    14

*Perez v. Ellington*, 421 F.3d 1128 (2005)    1,6

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460
U.S. 37 (1983)    3

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555    10

*Romero v. Fay*, 42 F.2d 1472(10th Cir. 1995)    22

*Sevigny v. Dicksey*, 846 F.2d 953 (4th Cir. 1988)    22

*Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000)    10

*Smith v. Plati*, 258 F. 3d 1167    8

*Smith v. United States*, 561 F.3d 1090 (10th Cir. 2009)    14

*Tobey v. Jones*, 706 F.3d 379 (4th Cir. 2013)    2,12

*United States v. Grace,* 461 U.S. 171 (1983)    5

*United States v. Place*, 462 U.S. 696, 77 L. Ed. 2d 110
S. Ct. 2637 (1983)    5,19

*United States v. Sharpe*, 470 U.S. 675 (1985)    19

*Ward v. Rock Against Racism*, 491 U.S. 781(1989)    3

*Worrell v. Henry,* 219 F.3d 1197 (10th Cir. 2000)    1,7,10

*Wright v. State of Ga.*, 373 U.S. 284 (1963)    11

## U.S. Constitution

First Amendment    1-16

Fourth Amendment                                      17-24

# I.  PURSUANT TO CLEARLY ESTABLISHED LAW, DEFENDANTS VIOLATED PLAINTIFF'S FIRST AMENDMENT RIGHTS

## A. The District Court Erred When It Reasoned That The Location of Mocek's Filming Dictated Whether He Was Engaged In Constitutionally Protected Activity

The District Court (and Defendants) correctly stated the elements necessary to establish a claim of First Amendment retaliation outside of the employment context.[1] App. at 196; 463; see also Brief for the Individual Federal Appellees ("Fed Defs' AB") at 16; City of Albq. Defs' Answer Brief ("City Defs. AB") at 9. It then proceeded to ignore that test completely. The Court collapsed the test articulated in *Worrell v. Henry,* 219 F.3d 1197, 1212 (10th Cir. 2000) (the "*Worrell* test") into a single inquiry of reasonableness driven by forum analysis. This was error.

Nowhere is this more apparent than in the District Court's analysis of whether or not Mocek was engaged in constitutionally protected activity. Defendants repeat this analytical error in their Answer Briefs by arguing that,

---

[1]    The elements a Plaintiff must establish are: "(1) that [he was] engaged in constitutionally protected activity; (2) that [Defendants'] actions caused [Plaintiff] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that [Defendants'] adverse action was substantially motivated as a response to [Plaintiff's] exercise of constitutionally protected conduct." *Perez v. Ellington,* 421 F.3d 1128, 1131-32 (10th Cir. 2005) citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000).

because limitations may be placed on a constitutional right in *some* instances, that right does not exist at all.

### 1.  Location Does Not Define Every First Amendment Analysis

As amply demonstrated in Appellant's Opening Brief, the right to gather news and information is an activity protected by the First Amendment.[2] See e.g., *Journal Pub. Co. v. Mechem*, 801 F.2d 1233, 1236 (10th Cir. 1986); App.'s Opening Brief ("AOB") at 27-31. That this right, or any other, is not absolute in all circumstances does not strip it of its constitutional status. *Journal Pub. Co.*, 801 F.2d at 1236 (explaining that the court must narrowly tailor any prior restraint and must consider reasonable alternatives to that restraint which have a lesser impact on First Amendment rights).

A forum-based analysis, including whether or not government actors have imposed reasonable time, place, manner restrictions, is appropriate "when a

---

[2]     While both the State and Federal Defendants find it necessary to point out that Mocek does not use the 'magic words' 'news or information gathering' in his Complaint (City Defs. AB at 9; Fed Defs' AB at 16), fortunately, he does not have to.  It is black letter law that properly pleading a claim for relief does not depend on 'magic words' or conclusory labels. *Tobey v. Jones*, 706 F.3d 379, 385-86 (4th Cir. 2013), citing, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("formulaic recitation of the elements of a cause of action will not do.") It is the underlying factual allegations that matter. *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009) (conclusory allegations not sufficient). Moreover, as the District premised its analysis on Mocek's contention that he was engaged in news or information gathering, and the Defendants here do as well, these statements are irrelevant.

plaintiff seeks to launch a First Amendment challenge addressed to a policy or practice that restricts expressive activity on public property." *Berner v. Delahanty,* 129 F.3d 20, 26 (1st Cir. 1997); see also *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985) ("the Court has adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes."); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 44 (1983) (The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue.) This, however, is a retaliation case, not one about Mocek's right to access the airport or the Defendants' right generally to impose certain restrictions on First Amendment activity.

But even in cases where general prohibitions to access are the issue, the location of the activity does not "define" what constitutes a First Amendment activity. See e.g., *Ward v. Rock Against Racism*, 491 U.S. 781, 790 (1989) (finding "[m]usic, as a form of expression and communication, is protected under the First Amendment" but then holding that a city ordinance restricting it was reasonable); *Clark v. Comm. for Creative Non-Violence*, 468 U.S. 288, 293 (1984) (Assuming that sleeping in parks in connection with demonstration is expressive conduct protected to some degree by the First Amendment before turning to the question of

whether a restriction on that speech is reasonable); *Cornelius,* 473 U.S. at 799

("Even protected speech is not equally permissible in all places and at all times.")

It is error to use the forum test to construe the nature of the right *qua* right, and that

is especially true in a retaliation case where the gravamen of the cause of action is

that a government action, which is otherwise reasonable, was done in retaliation for

engaging in a constitutionally protected activity.[3]

    *Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 679 (1992)

(*Krishna*) does not change this result. In *Krishna*, a case about access to a

particular forum and not retaliation, the Supreme Court held that restrictions put on

soliciting were reasonable and did not violate the First Amendment. The Court

never held that, because the ban was reasonable, solicitation is not protected

activity. To the contrary, the Supreme Court clearly stated the opposite: "[i]t is

uncontested that the solicitation at issue in this case is a form of speech protected

under the First Amendment." *Krishna,* 505 U.S. at 677-78. Thus, the Supreme

Court's conclusion that the airport's restrictions on Plaintiff's access were

---

[3]

    Moreover, Mocek's passive filming and information gathering is qualitatively different from the sort of "expressive activity" discussed in this line of cases. That it is generally passive, and is often utilized to facilitate *later* acts of expression, including at times a more explicit viewpoint, does not destroy the constitutional protections that adhere to it. *See Citizens United v. Fed. Election Comm'n,* 558 U.S. 310, 336-37 (2010). Activities that are not intuitively expressive may implicate the First Amendment because they facilitate speech. *See Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue,* 460 U.S. 575 (1983).

reasonable did not transform a constitutionally protected activity into one outside

of the zone of First Amendment protection. Similarly, peaceful picketing in a

public park, a quintessential First Amendment activity, does not become something

other than constitutionally protected speech because the police may lawfully

impose a curfew. See e.g., *United States v. Grace,* 461 U.S. 171, 176-77 (1983).

Several First Amendment retaliation cases in the Tenth Circuit illustrate the

misplaced nature of applying forum analysis to determine the nature of the right at

issue.

In *Worrell v. Henry*, the Plaintiff, a former FBI Agent, provided expert

testimony against government officers. *Worrell*, 219 F.3d at1201-1202. Later, the

Plaintiff was offered a job with the Oklahoma District Attorney's office that he

accepted. *Id.* at 1202. After his prospective employer discussed Plaintiff's prior

testimony with other government officials who expressed concern over his hiring,

the job offer was rescinded. *Id.*

Plaintiff brought a First Amendment retaliation claim against the

nonemployer government officials who discouraged his prospective employer from

hiring him. As to the first element, the Court concluded that testifying in a trial was

constitutionally protected activity. *Id.* at 1213. At no point does the Court engage

in forum analysis, despite the fact that a courtroom is a nonpublic forum. See e.g.,

*Berner v. Delahanty*, 129 F.3d 20, 26 (1st Cir. 1997). The location of the activity in *Worrell* is not at all dispositive of the inquiry as to whether the Plaintiffs act was constitutionally protected.

The District Court also cites *Perez v. Ellington*, 421 F.3d 1128 (2005) as setting forth the standard for stating a claim for retaliation outside the employment context in the Tenth Circuit. App. at 196; 462-63. In *Perez*, Plaintiffs, members of the Nambé Pueblo Indian Tribe, entered into a contract with a gasoline distribution company. *Perez*, 421 F.3d at 1129. Defendants, New Mexico Tax and Revenue Department officials, were contacted by the Governor of the Tribe, who expressed concerns regarding the agreement. *Id.* at 1130. "Fearing that a traditional investigation of the nation would prove difficult because of tribal sovereign immunity protections, Defendants decided to issue a jeopardy tax assessment against Plaintiffs."[4] *Id.* Defendants' decision to issue the jeopardy tax assessments was buttressed by an opinion from the Bureau of Indian Affairs that found the contract at issue invalid, as well as Defendants own preliminary investigation, and as result, Defendants issued a lien against Plaintiffs property. *Id.* Upon completion of its audit, however, Defendants determined that there was nothing illegal about

---

[4]    "A jeopardy tax assessment is a method used by New Mexico tax officials in emergency situations when an official "'reasonably believes that the collection of any tax for which a taxpayer is liable will be jeopardized by delay....'" *Perez*, 421 F.3d at 1130.

Plaintiffs' agreement. *Id.* Yet, the liens associated with the tax assessments were not released for more than a year. *Id.* at 1131.

Plaintiffs brought a First Amendment retaliation claim based on the right of association. Citing *Worrell v. Henry*, the Tenth Circuit found that Plaintiffs supported their claim that they were unconstitutionally discouraged from associating with non-tribal members because of Defendants' retaliatory action because of the "quick issuance of the jeopardy tax assessments, Defendants' failure to follow the normal procedures for issuing jeopardy tax assessments, and Defendants' failure to timely release the liens after their abatement." *Id.* at 1132. The Court further found that a reasonable fact finder could conclude that the quick decision to issue the tax assessments could chill a reasonable person of ordinary firmness. *Id.* Finally, the Tenth Circuit explained that "Defendants' extreme delay in releasing the liens on Plaintiffs' property evidences a retaliatory motive." *Id.*

Nowhere in *Perez* does the Tenth Circuit suggest that the location of the association determined the existence of the protected activity alleged. Moreover, the reasonableness or good faith of the Defendants were not relevant to whether a First Amendment right to associate existed in the first place. Significantly, in affirming the lower court's denial of summary judgment, the Court noted that whether Defendants' actions were based on a good faith belief that Plaintiffs were

involved in illegal activity and whether the time lapse in releasing the lien was negligence, rather than retaliation, would be subjects for trial. *Id.* at 1132.

The District Court further relied on *Ken v. City of Loveland*, 661 F. 3d 498 (10th Cir. 2011) to establish the elements under a First Amendment retaliation claim. In *Ken*, Plaintiffs alleged that complaining on several occasions to City employees for unreasonable delays in obtaining building permits, Defendants retaliated by, among other things, further delaying those permits. *Id.* at 505. Plaintiffs' protestations – the protected activity alleged – occurred in several places, none of which were relevant to the Court's analysis of whether or not Plaintiffs satisfied the first prong of the *Worrell* test. 505-511.

Finally, *Smith v. Plati*, 258 F. 3d 1167 is instructive, but not for the reasons cited by Defendants and the District Court. In *Smith*, the Court found that publishing on a website satisfied the first element of the *Worrell* test because it was an activity protected by the First Amendment. *Smith*, 258 F. 3d at 1177. The "reasonableness" of any state action in response to Plaintiff's speech, or whether or not a website was a public or nonpublic forum, was not relevant to the Court's reasoning with respect to whether or not Plaintiff's speech fell under the ambit of the First Amendment. *Id.* In analyzing *a separate* cause of action, which was *not* a retaliation claim, the Court stated that there is no "absolute" First Amendment right

8

to gather news or any precedent establishing the "right of access *he* seeks." *Id.* at 1178.

Thus, whether or not there is a First Amendment violation of a Plaintiff's right to access a forum for certain purposes is a wholly separate inquiry from whether or not one is engaged in constitutionally protected activity when a retaliatory action is taken. In a retaliation case, like this one, the focus is on "the protected activity, the effect of the defendant's actions, and the defendant's intent …" *Worrell,* 219 F.3d at 1213. To have it otherwise, as the District Court and Defendants suggest, would effectively foreclose a cause of action for retaliation under the First Amendment whenever the alleged violation occurs in a nonpublic forum. It would also undermine the gravamen of a cause of action for retaliation – that a state action which may otherwise be reasonable, is retaliatory under specific factual circumstances. *DeLoach v. Bevers,* 922 F.2d 618, 620 (10th Cir. 1990) ("An act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper.")

As discussed extensively in Mocek's Opening Brief, the constitutionally protected nature of the activity is clear. See AOB at 27-29; 39-41. News and information gathering has been recognized as a activity protected by the First Amendment by the United States Supreme Court and several circuits, including

9

this one. *Journal Pub. Co.*, 801 F.2d at 1236 (citing *Branzburg v. Hayes,* 408 U.S.

665, 681 (1972)); see also *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555,

576 (plurality opinion) (recognizing that the First amendment incorporates a right

"to gather information."). This First Amendment right has been recognized to

extend to the activity of photographing and filming public officers performing

public duties. See *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000)

(recognizing First Amendment right to videotape police activities); *Fordyce v. City

of Seattle,* 55 F.3d 436, 439 (9th Cir.1995) (same); *Glik v. Cunniffe*, 655 F.3d 78,

82 (1st Cir. 2011) (recognizing First Amendment right to "videotape police

carrying out their duties"). Mocek has easily satisfied the first element necessary in

his retaliation claim.

### 2. The Injuries Caused By the Defendants' Retaliatory Actions Had An Objectively Chilling Effect and Were Not Trivial

The City's argument that there is no "objective chilling effect" because

Plaintiff does not allege that filming is "completely prohibited" is strange. City

Defs.' AB at 18. The test is whether or not the Defendants' actions caused Mocek

to suffer "an injury that would chill a person of ordinary firmness" *Worrell,* 219

F.3d at 1212. Mocek was seized, his property tampered with, he was arrested, and

criminally prosecuted by the City Defendants. App. 18-22 at ¶¶ 49-67; 26-27 at ¶¶

80-82, 86, 28 at ¶ 89. Those injuries are not "trivial" or "*de minimis*"; they are

objectively chilling by any measure. See *Smith,* 258 F.3d at 1176, quoting *Worrell,*

219 F.3d at 1212. That fact that Mocek was made to go through a trial where he was acquitted does not make the injury any less severe.

The Federal Defendants argue that Mocek must "prove" the causation element of his retaliation claim, and his failure to do so, is fatal. Fed. Defs.' AB at 35. This is not so. What Mocek must do is allege sufficient facts to state a claim here at the Motion to Dismiss stage. The procedural posture of the case relied on by the Federal Defendants, *Hartman v. McBeth*, 598 F.3d 708 (10th Cir. 2010) was, significantly, on review of a grant of summary judgment.[5] Moreover, the issue of whether Mocek has stated facts sufficient to show that Defendants lacked a proper basis for his arrest are issues in this appeal.

Moreover, in contrast to *Hartman,* although the City Defendants conducted the arrest, seizure, and prosecution, the federal defendants unlawfully ordered Mocek to stop engaging in perfectly legal, First Amendment activity, that posed no threat to anyone. This unlawful order caused injury that carried with it an objectively chilling effect. See *Wright v. State of Ga.*, 373 U.S. 284, 291-92 (1963). The Federal Defendants very purpose in issuing the order was to not only chill but to freeze Mocek's right to gather information about public officials

---

[5] It is worth nothing that the court in *McBeth* held that the Plantiff was engaged in constitutionally protected activity, "[t]he right to retain and consult with an attorney ..." without engaging in forum analysis. *McBeth*, 598 F.3d at 716.

conducting public duties in a public place. After issuing illegal orders to stop, and

attempting to seize the camera, the Federal Defendants summoned law

enforcement. App. at 18 ¶ 46-47. These facts are enough to satisfy the second

element necessary to state a claim for retaliation. See *Tobey*, 706 F.3d at 386.

### 3. Mocek's Well-Pleaded Complaint Makes Clear That Defendants' Actions were SubstantiallyMotivated As A Response To His Filming

Mocek is not asking the Court "to presuppose what was in the minds of the

City Defendants …" nor is he required to vocalize his intent. City Defs.' AB at 21;

Fed. Defs.' AB at 18, FN 7. The required element is that Mocek sufficiently allege

that the Defendants "adverse action was substantially motivated as a response to

the plaintiff's exercise of constitutionally protected conduct." *Worrell*, 219 F.3d at

1212. Mocek did so.

When Mocek told the TSA agents that he had no ID for them, their response

was that they would contact the Operations Center, and if Mocek could not be

identified, Mocek would not be allowed to proceed through the security

checkpoint.  At this point in time, there was no indication from any of the TSA

agents present that there was any intent to involve law enforcement. App. 17 at ¶

45. It was only when Mocek began filming the Defendants' activities that the

activities described above took place. Id. 18-19 at ¶ 46-50; 24-25 at ¶ 75-76.

Breedon asked Schreiner to call the state police officers. Id. at 24-25 ¶¶ 75-76.

Schreiner falsely claimed that Mocek was "hostile", "belligerent", and "taking

photographs in a threatening manner". Id. at 25-26 ¶¶ 77-78. Schreiner said that

Mocek "challenged the notion that taking pictures was prohibited." Id. at 25 ¶ 77.

State defendant Dilley finally told Plaintiff "comply with the TSA agents'

instructions or else he would be escorted out of the airport." Id. 19 at ¶ 51. When

Plaintiff refused to halt his filming, the State Defendants threatened to arrest him.

Id. ¶ 52.  Plaintiff never refused to leave the airport. Id. ¶ 53. When Mocek said he

was going to remain silent and wanted to talk to an attorney, Mocek was arrested

and his camera was seized (and its contents deleted). Id. at 19 ¶¶ 54, 57-73.  Mocek

was taken to jail, searched, booked, and eventually tried. Id. at 18-22 at ¶¶ 49-67,

80-82, 86, 89.

Whether the Defendants actions were actually taken for other, non-

retaliatory reasons, is not properly addressed at the Motion to Dismiss stage when

Mocek has pled facts showing that Defendants' adverse actions against him were

in response to his filming. *Worrell*, 219 F.3d at 1213-14.

## A. Defendants are Not Entitled to Qualified Immunity

Mocek cited ample authority in his Opening Brief demonstrating the clearly

established nature of the right to gather news and information, and to more

specifically, the right to record police officers and public officers in the course of

carrying out their duties in public. AOB 38-42. The right to gather information

13

"serves a cardinal First Amendment interest in protecting and promoting 'the free discussion of governmental affairs.'" *Glik,* 655 F.3d at 82 (citing *Mills v. Alabama,* 384 U.S. 214, 218 (1966). The right to gather information helps to secure "'the paramount public interest in a free flow of information to the people concerning public officials...'" *Pell v. Procunier*, 417 U.S. 817, 832 (1974) (internal citations and quotations omitted).

On a motion to dismiss, the Court is required to accept the Complaint as it is written and must view the allegations in the light most favorable to Mocek. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). Nevertheless, the Defendants have added facts that contradict the allegations in the Complaint or recast them in a light unfavorable to Plaintiff. The Court adopted these errors, and, consequently, imcorrectly found Defendants' actions reasonable.

Mocek did not "intend" to cause a disruption – the Complaint describes no such premeditation. While Mocek did research the laws and regulations regarding photography at various airports, he began using his camera at the airport only after it became clear that Albuquerque TSA employees were subjecting him to an "atypical, alternative identification policy." App. at 18 ¶ 46. Mocek had successfully flown without identification since 2007 and believed that attempted to fly without it again, the typical TSA reaction would be to send him to a separate line to await assistance and additional questioning. App. at 13 ¶¶ 27-28.

14

Defendants' conclusory allegation, again adopted by the District Court, that Mocek was "disruptive" is not grounded in the allegations of the Complaint. "Mocek in fact consistently used a calm, quiet tone of voice. Mocek did not yell at any TSA agents or law enforcement officers." App. at 23 at ¶ 86-87; see also App. at 9, 22-23 at ¶¶ 4-5; 69-71. Video footage shows people walking by without any hesitation and the travelling public did not stop and take notice. Id. at 23-27, ¶¶ 71, 73. Video and audio recordings confirm that Mocek "calmly and nonbelligerently insisted that he had a right to continue filming. Id. at 26 ¶79. There was no problem until Mocek began filming and stated that he did not believe filming was illegal. (Id. at 18 ¶ 46.) Instead of explaining why it was reasonable to ask Mocek to stop engaging in lawful activity, Officer Breedon tried to take Mocek's camera. Id. Officer Breedon then falsely told him that videotaping was not allowed at the checkpoint and called for police assistance. Id. at 18 ¶ 46-47. The first complaint from the TSA agents upon arrival of the City law enforcement officers was that Mocek would not stop filming. Id. at 18 ¶ 49. There are no allegations or reasonable inferences from this description of events that if Mocek "caused a disturbance." In fact, it is unreasonable to infer from the *facts alleged* in the Complaint that Mocek was engaged in criminal behavior, and courts should be weary of government actors bringing discretionary charges and look closely at the behavior involved.

The right to gather news and information, and in particular, the right to record public officials in public is clearly established law which the Defendants violated here.

## II. PURSUANT TO CLEARLY ESTABLISHED LAW, DEFENDANTS VIOLATED PLAINTIFF'S FOURTH AMENDMENT RIGHTS

### A. City Defendants Had No Reasonable Suspicion to Request Plaintiff's Identification

For defendants to argue that there was "reasonable suspicion" to justify a *Terry* stop in this instance, what is needed is an articulable and reasonable basis for such suspicion. *Hiibel v. Sixth Judicial District Court,* 542 U.S. 177, 184-185 (2004).

As illustrated by the Complaint, no such facts exist. When Dilley came on the scene, he was told by the TSA agents that Mocek would not put down his camera. App. 18-19. Mocek said that he would comply with all of TSA's rules and regulations. Mocek also said that he did not believe there was any rule that barred him from using a camera in publicly accessible areas of the airport. App. 19.

Dilley told Mocek that he had to leave the airport. Mocek did not refuse to leave the airport, even though he had a ticket that he had paid for and that was in his own name.

As stated in the Complaint, "Dilley then changed his mind and said that he needed to see Mocek's ID, or else he was going to arrest Mocek for concealing his identity. Mocek told him that he did not have any I.D. to show Dilley." App. 19.

Mocek's statement was true, as Mocek had no ID in his personal possession at that time. Mocek had given his ID to a friend to hold for him. App. 17.

Defendants make an unsupported claim that they "fully briefed the relevant federal regulations governing TSA's duties and the necessity of preventing and stopping patrons from interfering with TSA agents' duties." (See App. 54-56 ¶ 1, App. 65 ¶ 43, App. 66 ¶ 1. City Defs. AB at 31. The court made a bald recitation of these regulations in concluding that the City Defendants should be dismissed from the case. App. 501-505.

None of these regulations bar Plaintiff from filming at the security checkpoint. It should be noted that Defendants consistently refuse to cite a simple regulation that supports their conduct. The reason for their reluctance is that no such regulation exists.

It must be noted that the TSA Defendants conceded in the course of litigation that "TSA policies may generally not prohibit all filming at the checkpoint". App. 66.

Their argument was that "TSOs (transportation security officers) must have discretion to ask a passenger to refrain from filming and refer him or her to law enforcement officers when he or she refuses to comply with multiple TSA procedures and causes a disruption". App. 66.

The "multiple TSA procedures" have never been defined, because no such procedures exist, nor were they invoked.

The court ruled that the order that "Mocek cease filming (was) a reasonable order under the circumstances, because Mocek's right to film at the checkpoint is subject to reasonable time, place and manner restrictions". App. 241.

The "reasonable time, place and manner restrictions" have never been defined, because no such procedures exist.

Mocek did recognize that filming the monitors was not a good idea, and he pointedly refrained from such conduct.

As stated in the complaint, Mocek relied on an official TSA blog entry stating that "you can take pictures at our checkpoints as long as you're not interfering with the screening process or slowing things down. We also ask that you do not film or take pictures of our monitors." App. 15. This was a request in the main text, not a directive. App. 15.

There is no evidence that the plaintiff was filming the monitors or that there was any realistic possibility that he would accidentally film the monitors.

The complaint also alleges that when Mocek asked a TSA official if coordination with TSA was required prior to filming, he was told in writing only that "*it is advisable*" and that "the information I have provided to you is a recommendation. We *only encourage* individuals to contact TSA in advance so we can facilitate the photography." App. 16. (italics added).

In summary, these facts do not rise to a level justifying a *Terry* stop. The officer's action must be "'justified at its inception, and reasonably related in scope to the circumstances which justified the interference in the first place.'" United States v. Sharpe, 470 U.S. 675, 682 (1985)   For example, the seizure cannot continue for an excessive period of time, see United States v. Place, 462 U.S. 696, 709, 77 L. Ed. 2d 110, 103 S. Ct. 2637 (1983), or resemble a traditional arrest, see Dunaway v. New York, 442 U.S. 200, 212, 60 L. Ed. 2d 824, 99 S. Ct. 2248 (1979).

As stated in the Complaint, there was no justification for Dilley's demand for Mocek to stop taking pictures, nor was there any justification to change his mind about escorting Mocek from the airport and to arrest Mocek for not having ID on his person. App. 19.

**B. Even if the court decides that a Terry stop was justified, Defendant Dilley never asked Plaintiff for his name - only his ID.**

19

Even if the court decides that the facts do justify a *Terry* stop, it must be recalled that *Hiibel* indicates that a statute such as the New Mexico "stop and identify" statute is satisfied if the accused party provides a name. *Id.* at 185.

Otherwise, as stated in *Kolender v. Lawson*, 461 US 352, 360 (1983), such a statute must be construed as void because it provides no standard for determining what a suspect must do to achieve compliance, resulting in virtually unrestrained power to arrest and charge persons with a violation.

In this case, the officer never asked Mocek for his name - he only asked for his ID.

In the United States, there is no law requiring a citizen to carry government ID. In response to Dilley's order to show him ID, Mocek truthfully told the officer that he had no ID to show him.

That was as direct and clear a response as anyone could ask for.

While *Hiibel* makes it clear that no one can be arrested for not providing ID, it also states that citizens can be arrested for not providing identifying information (such as a name, and, depending on the state statute, more information) when asked in the context of a justified *Terry* stop. *Id.*, at 184-185.

20

If Dilley had asked Mocek for his name, it would appear under *Hiibel* and New Mexico state law that Mocek may have had an obligation to provide it. But Dilley never asked that question. That distinction is crucial in this case.

## C. There was no probable cause for Mocek's arrest

Dilley didn't ask Mocek for his name. He only asked him for his ID, forbidden by *Hiibel*.

Mocek committed no disruptive conduct, as alleged in the Complaint. App.19. There was no evidence Mocek's behavior disturbed other passengers. App. 23-24.

Mocek never went through the security checkpoint and remained in publicly accessible areas of the airport. App. 9, 20.

Hence, Dilley violated Mocek's fourth and fifth amendment rights by arresting him without probable cause. Dilley's actions were acts of standardless discretion, committed in the absence of probable cause as defined in *Delaware v. Prouse*, 440 U.S. 648, 661 (1979)

## D. There was an obligation to conduct a reasonable investigation

If a reasonable investigation had been conducted, Dilley would have known Mocek's name was on the boarding pass. All the Defendants are equally at fault.

The objective analysis is focused on requiring officers to "reasonably interview witnesses readily available on the scene." *Romero v. Fay*, 42 F.2d 1472, 1476-1477 (10th Cir. 1995). If Dilley did not know Plaintiff's name, it's because he did not reasonably interview the witnesses, and because the TSA Defendants withheld that information from him.

*Sevigny v. Dicksey*, 846 F.2d 953, 957 (4th Cir. 1988) must be read in the light of *Romero*. For Dilley to arrest the Plaintiff without asking anyone about whether Mocek was flying that day and the contents of his boarding pass was the height of incompetence.

## E. It is clearly established that there is no qualified immunity for the 4th Amendment violations of the Defendants

The presence of probable cause is not even arguable here. Defendants fall into the category of "the plainly incompetent or those who knowingly violate the law", as illustrated by the boarding pass with Mocek's name on it. *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

*Hiibel* makes it clear that the police cannot demand ID. *Id.*, at 184-185. That's what Dilley did. *Hiibel* makes it clear that the police can ask a citizen for his name if there is reasonable suspicion. *Id.* Dilley never made that request.

None of these regulations bar Plaintiff from filming at the security

checkpoint. The TSA Defendants conceded in the course of litigation that "TSA policies may generally not prohibit all filming at the checkpoint". App. 66. The "multiple TSA procedures" Plaintiff supposedly violated have never been defined.

The "reasonable time, place and manner restrictions" have never been defined.

Many published opinions involving the right of citizens to film law enforcement officers in the course of their duties. Most notable in the Fourth Amendment context is *Glik v. Cunniffe*, 655 F.3d 78, 85-86 (1st Cir. 2011), where the Plaintiff was arrested for filming police officers in Boston Common. The court found that not only was there no probable cause to arrest the Plaintiff for this conduct, but that it wasn't even "arguable". *Id.* at 88.

It is axiomatic in these cases that the officers will allege that the citizens are disturbing the peace or interfering with their duties. See *Glik*, 655 F.3d at 80. The way these events generally play out is that Defendants order the citizen to stop filming, and then arrest the citizen upon noncompliance with this unconstitutional demand.

The claim that Plaintiff had engaged in disorderly conduct was false. Dilley filled up an incident report and criminal complaint with this and similar untruths that were used as the basis of four bogus criminal counts: Disorderly

conduct, concealing identification, refusing an officer's order, and criminal trespass.  App. 21, 26.  Defendants Wiggins and De La Pena also participated in this charade. Appellants' Opening Brief, 15-17, 43-44.

The argument that cameras inherently "interfer(e) with TSA agents' duties" and cause a "disruption" is particularly remarkable in light of President Obama's announcement in the last week for two hundred million dollars to be spent in a three-year initiative designed. *inter alia*, to increase the usage of body cameras among law enforcement officers in furtherance of their official duties and to prevent disruption.  http://www.justice.gov/opa/speech/attorney-general-eric-holder-delivers-remarks-during-interfaith-service-and-community

## CONCLUSION

The court is respectfully requested to provide the relief sought in the Opening Brief:  Reverse the challenged rulings of the district court, remand the proceedings to the district court, and appoint a new judge.

Dated:  December 12, 2014

_____/s/_____
WILLIAM M. SIMPICH
CHEROKEE MELTON
JAMES WHEATON
MARY JO BOELCKE

Attorneys for Plaintiff
PHILIP MOCEK

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

  [X ] this brief contains 5,613 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

  [X ] this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point font, Times New Roman.

Date: December 12, 2014

_____
William M Simpich
Attorney for Appellant, Phillip Mocek
1736 Franklin St, 10th Floor, Oakland, CA 94612
email: bismpich@gmail.com
(510) 444-0226

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

### APPELLANT'S REPLY BRIEF

(1) all required privacy redactions have been made per 10th Cir. R. 25.5;

(2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(3) the digital submissions have been scanned for viruses with the most recent version of McAfee Security Scanner, and according to the program are free of viruses.

_____

WILLIAM M SIMPICH

Attorney for Appellant

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2014, I electronically filed the foregoing using the court's CM/ECF system which will send notification of such filing to the following:

Jeffrey L. Baker , The Baker Law Firm        jeff@bzjustice.com

Manuel Lucero, US Attorney's Office        manny.lucero@usdoj.gov

Edward J Martin, US Department of Justice edward.martin2@usdoj.gov

Renni Zifferblatt, Baker Law Firm        renni@bzjustice.com

Date: December 12, 2014

_____
William M Simpich
Attorney for Appellant, Phillip Mocek
1736 Franklin St, 10th Floor, Oakland, CA 94612
email: bismpich@gmail.com
(510) 444-0226